UNITED STATES

v.

**Airman First Class Scott D. BOIE,
United States Air Force.**

**ACM 37546.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 2 May 2009.

29 June 2011.

Appellate Counsel for the Appellant: Major Anthony D. Ortiz (argued); Lieutenant Colonel Gail E. Crawford; Major Shannon A. Bennett; Major Darrin K. Johns; and Major Bryan A. Bonner.

Appellate Counsel for the United States: Major Naomi N. Porterfield (argued); Lieutenant Colonel Jeremy S. Weber; and Gerald R. Bruce, Esquire.

Before BRAND, ORR, and ROAN, Appellate Military Judges.

## OPINION OF THE COURT

ROAN, Judge:

In accordance with his pleas, a general court-martial composed of officer and enlisted members convicted the appellant of one specification of the attempted killing of an unborn child,[1] larceny of personal property valued at less than $500.00, arson, and assault consummated by a battery, in violation of Articles 119a, 121, 126, and 128, UCMJ, 10 U.S.C. §§ 919a, 921, 926, 928. The adjudged sentence consisted of a dishonorable discharge, nine and one-half years confinement, total forfeiture of all pay and allowances and reduction to the grade of E–1. The convening authority reduced the appellant's confinement to five years and approved the remaining sentence as adjudged.

The appellant raises five issues for our consideration: (1) Whether the use of the phrase "causing the death of an unborn child"[2] in Article 119a is unconstitutionally vague[3]; (2) Whether Article 119a violates the Equal Protection Clause[4] of the United States Constitution because it adopts a gender-based classification; (3) Whether Article 119a violates the Eighth Amendment right against cruel and unusual punishment; (4) Whether Article 119a is unconstitutional because it adopts a "theory of life" that violates the Establishment Clause[5]; and (5) Whether the military judge improperly conducted a proceeding in revision to change the findings for Charge IV and its specification after the court had been adjourned.

Having reviewed the record of trial, briefs from both sides, and accompanying documents, we find no error that materially prejudices a substantial right of the appellant and affirm.

*Background*

In March 2008, the appellant impregnated his then girlfriend, CB. She notified him of her pregnancy in April 2008 and they were married shortly thereafter. The appellant was very unhappy with the pending birth of his child and asked CB to obtain an abortion. CB became upset and told the appellant she would not undergo the procedure. On 1 May 2008, an ultrasound performed on CB indicated her fetus had a heartbeat. The appellant was present at this appointment.

The appellant discussed the pregnancy with two friends and began to research methods to induce an abortion. He subsequently bought Misoprostol, a drug known to cause abortions, from an online company in Canada. With the assistance of a friend, the appellant ground up the drug and put the powder into CB's food and drink on four different occasions, without her knowledge. On at least one instance, CB ate part of a deviled egg containing the drug.

On 7 May 2008, CB began to experience severe cramping and awoke to find she was bleeding. She was taken to the hospital, where an ultrasound revealed she had miscarried. It was estimated that her pregnancy terminated at approximately eight weeks gestation. A few months later, CB heard from a friend that the appellant caused the abortion by putting drugs into her food. She confronted her husband on the phone and secretly taped the conversation. The appellant ultimately admitted to what he had done and CB took the information to the Air Force Office of Special Investigations.

The appellant was charged, inter alia, with the intentional killing of an unborn child in violation of Article 119a. Prior to entering his pleas, appellant's counsel moved to dismiss the charge as unconstitutional, raising

---

1. The appellant was acquitted of the greater offense of intentional killing of an unborn child.

2. We note that the language of Article 119a, UCMJ, 10 U.S.C. § 919a, criminalizes conduct that "causes the death of … a child, who is in utero at the time the conduct takes place."

3. U.S. Const. amend. V.

4. U.S. Const. amend. XIV, § 1.

5. U.S. Const amend. I.

issues one through four before us now. The military judge denied the motion in full.

In accordance with a pretrial agreement, the appellant pled guilty to assault on CB and the attempted killing of an unborn child. Additionally, he admitted to stealing a Marine corporal's car and setting it on fire. The appellant and a friend stole the car to "teach the corporal a lesson" about something the Marine had done. They took the car and left it in the woods. Worried that someone might discover what they had done, the appellant returned to the car and burned it in an attempt to destroy evidence of their wrongdoing.

### Waiver

Although not discussed by either the appellant or appellee, we believe it is necessary to determine whether the issues now raised on appeal were waived as a result of the appellant's guilty plea. Rule for Courts–Martial (R.C.M.) 910(j) states that a guilty plea "waives any objection ... insofar as the objection relates to the factual issue of guilt of the offense(s) to which the plea was made." However, R.C.M.s 905(e) and 907(b)(1) provide that lack of jurisdiction or failure to state an offense is not waived by failure to raise the issue at trial.

 We agree with the decision of our sister court that a guilty plea does not foreclose appellate review on the constitutionality of the charge: "After a thorough review, we hold that the appellant is entitled to raise the issue of the constitutionality of her sodomy conviction on appeal even though she did not raise the issue at trial. We believe that this view is consistent with R.C.M. 905(e) and the holdings of the Supreme Court and is not inconsistent with our superior court." *United States v. Bart*, 61 M.J. 578, 581 (N.M.Ct. Crim.App.2005). *See also United States v. Robbins*, 52 M.J. 159, 160 (C.A.A.F.1999) (preemption issue not waived by appellant's guilty plea); *Menna v. New York*, 423 U.S. 61, 62, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975) ("Where the State is precluded by the United States Constitution from hailing a defendant into court on a charge, federal law requires that a conviction on that charge be set aside even if the conviction was entered pursuant to a counseled plea of guilty"). If Article 119a is in fact unconstitutional for the reasons raised by the appellant, it was not cognizable by a court-martial. We hold, therefore, that the appellate issues before us were not waived by the guilty plea.

### Article 119a

As recently as 2000, military courts adhered to the common law "born alive" doctrine, wherein a child must be "wholly expelled from its mother's body and possessed or was capable of an existence by means of a circulation independent of her own" in order for an accused to be convicted of the homicide of that child. *United States v. Nelson*, 53 M.J. 319, 323–324 (C.A.A.F.2000) (quoting *United States v. Gibson*, 17 C.M.R. 911, 926 (A.F.B.R.1954)).[6]

The Unborn Victims of Violence Act of 2004 (UVVA) marked a change from the "born alive" rule and Congress specifically added Article 119a to the UCMJ. Under this new provision, any person subject to the UCMJ who engages in the murder, voluntary manslaughter, involuntary manslaughter, rape, robbery, maiming, arson or assault (hereinafter "predicate offense") of a pregnant woman, and thereby intentionally or unintentionally causes the death of, or bodily injury to, an unborn child, is subject to trial by court-martial. Article 119a(d) defines an unborn child as a child in utero and further defines a child in utero as a "member of the species homo sapiens, at any stage of development, who is carried in the womb." Article 119a(c) specifically exempts from prosecution persons involved in performing an abortion with the mother's consent, those providing medical treatment to the pregnant woman or unborn child, or the mother of the unborn child herself.

### Due Process—Void for Vagueness

 "The constitutionality of a statute is a question of law; therefore, the standard of

---

**6.** In *United States v. Robbins*, 52 M.J. 159 (C.A.A.F.1999), the appellant was convicted of involuntary manslaughter of an unborn child through assimilation of an Ohio feticide law. On appeal, our superior court rejected the appellant's argument that the preemption doctrine prohibited assimilation of the Ohio law. *Id.* at 163.

review is *de novo.*" *United States v. Wright,* 53 M.J. 476, 478 (C.A.A.F.2000). Appellant argues that the failure of the legislature to define "unborn child" leads to ambiguity and the phrase is so vague that it violates the Due Process Clause of the Fifth Amendment. Appellant provides several different interpretations and definitions for what denotes a "child" and argues the law's lack of specificity on this issue "will lead the triers of facts to give their own definitions as to when an unborn fetus becomes a 'member' of the species, when life occurs, and when death occurs. This, in turn would lead to indiscriminate results, as differing triers of facts will give various definitions, depending on their own subjective beliefs and interpretations."

Appellant further contends that Article 119a violates the principles of *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). In *Roe,* the Supreme Court specifically held that the word "person" as used in the Fourteenth Amendment does not include the unborn. *Id.* at 158, 93 S.Ct. 705. The Court also stated conception is a "'process' over time, rather than an event." *Id.* at 161, 93 S.Ct. 705. Therefore, according to the appellant, the Article 119a definition of an unborn child as a "member of the species homo sapiens, at any stage of development, who is carried in the womb" equates an unborn fetus to a constitutional person—an outcome specifically rejected in *Roe.* We disagree. For the reasons following, we conclude that the language of Article 119a is sufficiently precise to meet due process standards. We further find that Article 119a does not violate the limitations established in *Roe* and its progeny.

The Fifth Amendment commands "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." While "it is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined," *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972), appellate courts have long realized that it is not necessary to prescribe with mathematical certainty every potential definition or interpretation that can be attributed to the words contained within a penal statute. *See Dennis v. United States,* 341 U.S. 494, 515, 71 S.Ct. 857, 95 L.Ed. 1137 (1951) (upholding a federal statute despite finding that "the standard as defined is not a neat, mathematical formulary"); *United States v. Howe,* 37 C.M.R. 429, 443 (C.M.A.1967) ("So long as there are ascertainable standards of guilt, that is enough, for impossible standards of specificity are not demanded.").

Rather, the law must "define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Gonzales v. Carhart,* 550 U.S. 124, 148, 127 S.Ct. 1610, 167 L.Ed.2d 480 (2007). When a statutory provision is unambiguous, further judicial interpretation is unnecessary except in rare and exceptional circumstances. *United States v. James,* 478 U.S. 597, 606, 106 S.Ct. 3116, 92 L.Ed.2d 483 (1986), *abrogated in nonrelevant part by Central Green Co. v. United States,* 531 U.S. 425, 436, 121 S.Ct. 1005, 148 L.Ed.2d 919 (2001). An appellate court is bound to assume that the legislative purpose of a statute is accurately expressed in the language of the statute. *American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982).

The central issue in the present case is whether the appellant was on fair notice of the criminal conduct proscribed by Article 119a. We find that he was.

Contrary to the appellant's contention, the conduct prohibited by Article 119a does not bring into play any ambiguities that may attend the debate over the question of when the life of a human person begins or ends. Congress specifically defined the parameters of when criminal liability attaches. The government must prove only that a developing embryo existed at the time the service member committed a predicate offense against the mother that ultimately could or did end the embryo's existence. In the appellant's court-martial, the trier of fact was not required to determine whether the embryo was viable or whether it was "a person." Nor were the members called upon to make the philosophical decision of when life begins and death occurs. Such distinctions are irrele-

vant with respect to determining criminal liability.

Two state courts have addressed a similar issue with respect to their state's unborn homicide statutes. In *State v. Merrill*, 450 N.W.2d 318, 324 (Minn.1990), the Minnesota Supreme Court held:

> [T]he statutes do not raise the issue of when life as a *human person* begins or ends. The state must prove only that the implanted embryo or the fetus in the mother's womb was living, that it had life, and that it has life no longer. To have life, as that term is commonly understood, means to have the property of all living things to grow, to become. It is not necessary to prove, nor does the statute require, that the living organism in the womb in its embryonic or fetal state be considered a person or a human being.... Criminal liability here requires only that the genetically human embryo be a living organism that is growing into a human being. Death occurs when the embryo is no longer living, when it ceases to have the properties of life.

Likewise, an Illinois appellate court noted:

> It is unnecessary to prove the unborn child is a person or human being. The statute only requires proof that, whatever the entity within the mother's womb is called, it had life and, because of the acts of the defendant, it no longer does. The name given to that entity is irrelevant to the liability under the statute.... The trier of fact need not decide whether the entity within the mother's womb is a person or human being, but only that it once had life which was snuffed out by the acts of the defendant. This is a reasonable interpretation of the law. Thus, the statute will not be applied in an arbitrary or discriminatory manner and therefore does not violate the due process clause of the United States Constitution.

*People v. Ford*, 221 Ill.App.3d 354, 163 Ill. Dec. 766, 581 N.E.2d 1189, 1201–1202 (1991).

We find the Minnesota and Illinois court decisions in these cases to be persuasive and adopt their reasoning. In the final analysis, the questions that must be addressed in the appellant's case are whether the embryo carried by CB had the properties of life and whether the appellant attempted to end that life by poisoning CB's food. The evidence unmistakably shows both questions must be answered in the affirmative.

Appellant's argument that Article 119a equates an unborn fetus to a constitutional person and thereby runs afoul of *Roe* is mistaken. The debate surrounding the UVVA clearly indicates that the law was specifically drafted to comply with *Roe*, noting that H.R. 1997 (later the UVVA) "in no way interferes with nor restricts the abortion right articulated in Roe." H.R.Rep. No. 108–420, pt. 1, at 18 (2004), *reprinted in* 2004 U.S.C.C.A.N. 533. Further, nothing in Article 119a attempts to treat the embryo as a person. The law merely provides protection to that unborn entity, whether it is called a child, embryo, zygote, or fetus.

It is also critical to recognize that *Roe* dealt not with the criminal acts of a third party such as the case sub judice, but was rather an attempt to balance the competing concerns of a mother's right to privacy concerning her unborn child with the state's "important and legitimate interest in protecting the potentiality of human life." *Roe*, 410 U.S. at 162, 93 S.Ct. 705; *Webster v. Reproductive Health Services*, 492 U.S. 490, 519, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989) ("[W]e do not see why the State's interest in protecting potential human life should come into existence only at the point of viability, and that there should therefore be a rigid line allowing state regulation after viability but prohibiting it before viability.").

We conclude that Article 119a is not unconstitutionally vague. The law clearly and succinctly encompasses an embryo at any stage of development in utero. The statute provides adequate notice to an ordinary person about what conduct is forbidden. Given the plain, common sense reading of the term "unborn child," it is difficult to imagine a situation in which the meaning would be unclear.[7] Moreover, because the law's mean-

---

7. Indeed, state courts have consistently rejected challenges to state fetal homicide laws on due process void for vagueness grounds. *See Commonwealth v. Bullock*, 590 Pa. 480, 913 A.2d 207

ing is readily understood, we are convinced that it will not be applied by commanders, law enforcement, or the courts in an arbitrary or discriminatory manner. Accordingly, defendant's vagueness challenge fails, both facially and as applied.

### Equal Protection

The appellant argues Article 119a violates equal protection by adopting gender-based differences as to who may be criminally liable. Specifically, Article 119a exempts mothers from prosecution for causing harm to the unborn child but excludes the father from similar protection. Citing *Plyler v. Doe*, 457 U.S. 202, 216, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982), the appellant reminds us that "[t]he Equal Protection Clause directs that 'all persons similarly circumstanced shall be treated alike.'" The appellant then provides various examples of how a father might be court-martialed for conduct that causes the unborn child to die in utero but the mother would be free from prosecution for the same actions. Without further analysis, the appellant argues that because Article 119a does not provide the same protection for the father as it does for the mother, the law is constitutionally invalid.

We review equal protection issues de novo. *Wright*, 53 M.J. at 478. Our superior courts "have long recognized that 'men and women in the Armed Forces do not leave constitutional safeguards and judicial protection behind when they enter military service.'" *United States v. Marcum*, 60 M.J. 198, 205 (C.A.A.F.2004) (citations omitted). However, the appellant who alleges an equal protection violation "has the burden of proving 'the existence of purposeful discrimination.'" *McCleskey v. Kemp*, 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987) (quoting *Whitus v. Georgia*, 385 U.S. 545, 550, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967) (Ginsburg,

J., concurring)). The appellant has failed to meet his burden on this issue.

"The Federal Government has a duty under the Due Process Clause of the Fifth Amendment to guarantee to all its citizens the equal protection of the laws." *Selective Service System v. Minnesota Public Interest Research Group*, 468 U.S. 841, 876, 104 S.Ct. 3348, 82 L.Ed.2d 632 (1984) (Marshall, J., dissenting). However, the Supreme Court has also said "The Fourteenth Amendment's promise that no person shall be denied the equal protection of the laws must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons." *Romer v. Evans*, 517 U.S. 620, 631, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996) (citing *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 271–72, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979)). When evaluating an equal protection issue, "[I]f a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end." *Id.*

The first question we must resolve, therefore, is whether the statute concerns a fundamental right or impacts a suspect class. If it does not, we must determine whether the law is supported by a rational basis.

The Minnesota Supreme Court addressed this same issue in *Merrill*. The appellant claimed that the state's unborn child homicide statute exposed him to serious penal consequences while others, to include mothers who intentionally terminate a nonviable fetus or embryo, were not subject to criminal sanctions. In dismissing the appellant's equal protection argument, the court said:

In short, defendant claims similarly situated persons are treated dissimilarly. We disagree. The situations are not similar.

(2006) ("We believe that the concepts of life and its cessation are readily understandable to persons of ordinary intelligence relative to biological life forms beginning at the cellular level"); *State v. MacGuire*, 84 P.3d 1171 (Utah 2004) (the phrase "unborn child" provides sufficient notice that "enables ordinary people to understand what conduct is statutorily prohibited"); *Lawrence v. State*, 211 S.W.3d 883 (Tex.App.2006), aff'd, 240 S.W.3d 912 (Tex.Crim.App.2007) ("The

plain language of the statute provides notice to ordinary persons that the intentional or knowing murder of a pregnant woman and her unborn child is forbidden"); *State v. Alfieri*, 132 Ohio App.3d 69, 724 N.E.2d 477 (1998) (statute proscribing "unlawful termination of another's pregnancy" provides "definite notice to ordinary persons that the unborn are protected from the moment of fertilization").

The defendant who assaults a pregnant woman causing the death of the fetus she is carrying destroys the fetus without the consent of the woman. This is not the same as the woman who elects to have her pregnancy terminated by one legally authorized to perform the act. In the case of abortion, the woman's choice and the doctor's actions are based on the woman's constitutionally protected right to privacy. This right encompasses the woman's decision whether to terminate or continue the pregnancy without interference from the state, at least until such time as the state's important interest in protecting the potentiality of human life predominates over the right to privacy, which is usually at viability. *Roe v. Wade* protects the woman's right of choice; it does not protect, much less confer on an assailant, a third-party unilateral right to destroy the fetus.

*Merrill,* 450 N.W.2d at 321–22 (internal citation omitted). An Illinois appellate court rejected an equal protection challenge on similar grounds.

Clearly, a pregnant woman who chooses to terminate her pregnancy and the defendant who assaults a pregnant woman, causing the death of her fetus, are not similarly situated. A woman consents to the abortion and has the absolute right, at least during the first trimester of the pregnancy, to choose to terminate the pregnancy. A woman has a privacy interest in terminating her pregnancy; however, defendant has no such interest. The statute simply protects the mother and the unborn child from the intentional wrongdoing of a third party. The legislature has chosen to punish this third-party conduct by imposing criminal liability.

*Ford,* 163 Ill.Dec. 766, 581 N.E.2d at 1199.

As with the due process argument discussed previously, we find the *Merrill* and *Ford* decisions convincing. While it is certainly true that Article 119a makes a distinction on potential culpability based on biological considerations, equal protection guarantees are not violated because the law does not impact a fundamental interest of the appellant. The law does not impinge upon the father's right to produce children or promote their development, and while appellant may argue that his liberty interests are implicated by Article 119a the same can be said of any punitive statute. As the Pennsylvania Supreme Court fittingly observed, "the 'right' to unilaterally kill [an] unborn child that another person is carrying, is neither fundamental nor important—indeed, it does not exist." *Commonwealth v. Bullock,* 590 Pa. 480, 913 A.2d 207, 215 (2006).

The reality is the appellant poisoned his wife trying to kill his unborn child. There is no liberty interest associated with such conduct. The fact that Congress chose to exempt pregnant mothers from prosecution for harm to an unborn child does not in any manner involve a fundamental right of the appellant.

Having determined that the law did not violate any fundamental interests of the appellant, the next question is whether he was singled out for culpability because of his status as either a male or as the father of CB's unborn child. Simply put, he was not. The law does not differentiate based on gender. Any man or woman, other than the mother or authorized medical care giver, is subject to prosecution for harm done to an unborn child (assuming they engage in the predicate offenses necessary to trigger Article 119a, UCMJ). Further, the appellant is not similarly situated with CB. As both the *Merrill* and *Ford* courts noted, a pregnant mother has certain constitutional privacy interests that no other person can have with respect to her unborn child. Congress made a deliberate and informed decision to safeguard those rights by exempting the mother from potential prosecution in relation to the termination of the pregnancy. The appellant simply has no similar interests in jeopardy.

Because the appellant does not belong to a suspect class nor does the law impinge on a fundamental right, we must next determine whether Article 119a bears a rational relationship to a valid legislative purpose. The legislative history makes clear that the UVVA represents Congressional intent in protecting the potentiality of human life, and does so by criminalizing conduct that extinguishes that potential. Even detractors of

the legislation agreed that such protection was necessary.[8] We have no difficulty concluding that the Article 119a prohibitions are rationally tied to a legitimate interest in protecting the welfare of the unborn against harm caused by criminal assailants.

### Cruel and Unusual Punishment

Appellant next argues that life imprisonment, the maximum potential punishment under Article 119a is cruel and unusual, thereby violating the Eighth Amendment. Because the appellant was acquitted of intentionally causing the death of CB's unborn child, he was not eligible to receive a life sentence.[9] Consequently, the appellant does not have standing to raise this issue and we need not decide it at this time.

### Establishment Clause

■ In his final constitutional attack on Article 119a, the appellant argues that the UVVA adopts a "theory of life" in violation of the First Amendment's Establishment Clause. Specifically, the appellant alleges that, by creating protection for the unborn child from the moment of conception, Congress has implicitly advanced traditional Christian views regarding life. The appellant argues that "[t]he genesis of the bill can only suggest that the intent of the bill was to define life as occurring at fertilization." Applying Justice Stevens' partial concurrence and dissent in *Webster v. Reproductive Health Services*, 492 U.S. 490, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989), appellant maintains that "there can be no secular reason for identifying fertilization rather than implantation or viability as the beginning of life; only certain religious groups, and not the medical community, believe that life begins as early as fertilization."

The Supreme Court has established a three-part test for determining whether a law interferes with the Establishment Clause: "First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion; finally, the statute must not foster 'an excessive government entanglement with religion.'" *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) (citations omitted).

Applying the *Lemon* test, we find that Article 119a does not violate the Establishment Clause. Appellant seemingly contends that the only reason Congress enacted the UVVA was based on a desire to promote a Christian view that life begins at conception. While it may be entirely true that members of the legislative branch were influenced in some manner by religious convictions, the Supreme Court has held that mere consistency between a statute and religious tenets does not render a statute unconstitutional. *Harris v. McRae*, 448 U.S. 297, 319, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980) ("Although neither a State nor the Federal Government can constitutionally 'pass laws which aid one religion, aid all religions, or prefer one religion over another,' it does not follow that a statute violates the Establishment Clause because it 'happens to coincide or harmonize with the tenets of some or all religions.'" (citations omitted)); *Wallace v. Jaffree*, 472 U.S. 38, 56, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985) (A law may satisfy the "secular purpose" test even though it may be motivated in part by a religious purpose). Indeed, the Supreme Court has noted, "In many instances, the Congress or state legislatures conclude that the general welfare of society, wholly apart from any religious considerations, demands such regulation. Thus, for temporal purposes, murder is illegal. And the fact that this agrees with the dictates of the Judaeo–Christian religions while it may disagree with others does not invalidate the regulation." *McGowan v. Maryland*, 366 U.S. 420, 442, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).

---

8. "Everyone in the Senate wants to accomplish the same goal—punishing those who, by attacking or killing a pregnant woman, deprive families not only of the mother but also of the joy to help raise the child yet to be born. Punishing those who end a pregnancy and thus end the potential life experience, all of the hopes and dreams embodied by that pregnancy and the child to come, is an important advance in Federal criminal law." 150 Cong. Rec. S3124–02 (daily ed. Mar. 25, 2004) (statement of Sen. Feinstein).

9. The military judge determined the maximum authorized punishment for attempting to kill an unborn child was 20 years.

Moreover, appellant's argument fails to accept the stated secular rationale: protect the potentiality of human life and the rights of the mother and to punish the transgressor. Achieving this purpose does not advance a specific religious viewpoint nor does it impermissibly entangle government with religion. Rather the law adheres to the Supreme Court's recognition:

We repeat, however, that the State does have an important and legitimate interest in preserving and protecting the health of the pregnant woman, whether she be a resident of the State or a non-resident who seeks medical consultation and treatment there, *and that it has still another important and legitimate interest in protecting the potentiality of human life.*

*Roe,* 410 U.S. at 162, 93 S.Ct. 705 (emphasis added).

Finally, appellant's reference to Justice Stevens' opinion in *Webster* to buttress his argument ignores the fact that the Supreme Court did not invalidate the Missouri statute that declared "the life of each human being begins at conception ... unborn children have protectable interests in life, health, and well being ... the laws of this state shall be interpreted and construed to acknowledge on behalf of the unborn child at every stage of development, all the rights, privileges, and immunities available to other persons ... of this state." [10] While passing on the Establishment Clause issue, the Court reiterated that a state may enact laws that recognize the interests of *unborn children, so long as* the state does not include restrictions on abortion that *Roe* forbids. Given that the imposition of criminal liability is typically a secular matter and Article 119a was not enacted to serve or promote a solely religious purpose and does not improperly entangle the government in religious affairs, we find that the law does not violate the Establishment Clause.

*Proceeding in Revision*

■ In accordance with his pretrial agreement, the appellant pled guilty to Charge IV, excepting out the words "to induce a miscarriage" and substituting instead the words "in an effort to induce a miscarriage." [11] During the announcement of findings on the guilty pleas, the military judge found the appellant guilty of Charge IV as follows: "Of the Specification of Charge IV, Guilty, except the words 'to induce a miscarriage,' substituting therefore the words, 'in an effort to induce a miscarriage.' *Of the substituted words, Not Guilty;* of the remaining words, Guilty; and of the Charge, Guilty" (emphasis added). Unfortunately, neither the military judge nor counsel discovered the mistake until after the court had adjourned.

Prior to authentication of the record, the error was discovered and the military judge convened an R.C.M. 1102 hearing to discuss whether he could correct the mistake and find the appellant guilty of the substituted words "in an effort to induce a miscarriage." Following a discussion with trial and defense counsel, the military judge determined that it was the appellant's intent to plead guilty to the words "in an effort to induce a miscarriage" and but for his mistake, he would have been found guilty in accordance with that intent. The military judge further found that the appellant would not suffer any prejudice if he corrected the error because the members had been correctly informed in the flyer of the appellant's intent to plead guilty to assault in an effort to induce a miscarriage. The military judge noted that Charge IV only carried a six-month maximum punishment and the appellant's adjudged sentence was substantially less than the maximum punishment that could have been adjudged for all offenses. Consequently, the military judge determined he could reannounce the findings to Charge IV and find the appellant guilty of the substituted words.

10. MO.REV.STAT. §§ 1.205.1(1), 1(2), 2 (1986).

11. The specification to Charge IV read: "In that AIRMAN FIRST CLASS SCOTT D. BOIE, United States Air Force, 3d Equipment Maintenance Squadron, Elmendorf Air Force Base, Alaska, did, at or near Anchorage, Alaska, between on or about 1 April 2008 and on or about 1 June 2008, unlawfully assault his wife, [CB], by placing the medication Misoprostol in [CB]'s food without her knowledge or consent to induce a miscarriage."

Appellant now challenges the military judge's action in changing the initial findings with respect to the substituted words in Charge IV. He states that while R.C.M. 1102(b)(1) permits the military judge to conduct a proceeding in revision, R.C.M. 1102(c)(1) prohibits post-trial sessions for reconsideration of a finding of not guilty to any specification, or a ruling which amounts to a finding of not guilty. Because the military judge's pronouncement that the appellant was not guilty of the substituted words was "unambiguous and consistent," appellant argues the military judge overstepped his authority by changing the verdict after the court had adjourned, in violation of R.C.M. 1102(c)(1) and R.C.M. 922(d).

Having carefully reviewed the entire record, we find the appellant providently pled to Charge IV with the intent of being found guilty of assaulting his wife with the intent of inducing a miscarriage. This is supported by the pretrial agreement, the stipulation of fact, and his colloquy with the military judge regarding his actions in putting the drug into his wife's food in order to induce a miscarriage. Consequently, the post-trial R.C.M. 1102 session was not accomplished for the purpose of reconsidering the military judge's inadvertent finding of not guilty to the substituted words, but to rectify a mistake that had been made during the announcement of findings and to reflect the judge's intent to find the appellant guilty of the offense as modified. Such action is not prohibited by R.C.M. 1102(c)(1). The appellant did not suffer any prejudice by the military judge's action. The members were correctly informed as to what the appellant actually pled guilty to and were notified of the circumstances under which the appellant carried out the assault on his wife. We agree with the appellee's reference to the point that "[f]airness and common sense, not technicalities, should rule the law." *United States v. Townes*, 52 M.J. 275, 277 (C.A.A.F.2000) (Sullivan, J., concurring in the result). Our superior court has long recognized that we should not exalt form over substance:

> When a court-martial, after due deliberation, reaches its findings in the case, they must be announced in open court. . . . It is axiomatic that the findings as announced must represent the findings agreed upon by the [trier of fact] . . . the possibility exists that he will [speak] through some mischance err. Where such an event occurs, either the accused goes free on human frailty or the obligation mentioned above includes the duty to correct his mistake when it is brought timely to his attention. To say . . . that an announcement of the findings, if rendered in intelligible language, immediately becomes sacrosanct whether or not it expresses the finding actually reached, places too much emphasis on form. We have no desire to enunciate a doctrine which permits an error in expression to mean immunity for a person who has judicially admitted his guilt. *We are convinced that neither Congress nor the framers of the Manual intended that a procedure should be so rigid and inflexible as to prevent a court-martial from correcting what might be likened to a slip of the tongue.*

*United States v. Downs*, 15 C.M.R. 8, 11 (C.M.A.1954) (emphasis added).

For these reasons, we find the military judge did not err in conducting a post-trial R.C.M. 1102 session to correct the misstated findings and clarify that the appellant was found guilty of Charge IV, with the substituted words "in an effort to induce a miscarriage."

We note that even if it is later determined that the military judge erred by changing the initial findings with respect to Charge IV, such error is harmless. Just as R.C.M. 910(a)(1) allows an accused to plead guilty by exceptions and substitutions, R.C.M. 918(a)(1) allows findings of guilt by exceptions without substitutions. "One or more words or figures may be excepted from a specification and, when necessary, others substituted, if the remaining language of the specification, with or without substitutions, states an offense by the accused which is punishable by court-martial." R.C.M. 918(a)(1), Discussion. The words "in an effort to induce a miscarriage" were surplusage to the assault allegation. The government needed only to prove the appellant unlawfully put the Misoprostol into his wife's

food without her knowledge and consent and that she in fact ate some of that food. His motivation for doing so was irrelevant to the charge and such conduct constituted assault consummated by a battery under Article 128. Disregarding the substituted words does not change the illegality of the appellant's conduct and he should not receive a legal windfall for a slip of the judge's tongue.

### Conclusion

The findings and the sentence are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F.2000). Accordingly, the findings, and sentence, are

AFFIRMED.