# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

**No. ACM 40141**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Michael G. REIMERS**

Master Sergeant, U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 26 January 2023

———————————

*Military Judge*: Christina M. Jimenez.

*Sentence:* Sentence adjudged on 11 March 2021 by GCM convened at Nellis Air Force Base, Nevada. Sentence entered by military judge on 24 July 2021: Dishonorable discharge, confinement for 84 months, and reduction to E-1.

*For Appellant:* Major David L. Bosner, USAF.

*For Appellee*: Lieutenant Colonel Thomas J. Alford, USAF; Major John P. Patera, USAF; Major Zachary T. West, USAF; Mary Ellen Payne, Esquire.

Before POSCH, CADOTTE, and GOODWIN, *Appellate Military Judges*.

Judge GOODWIN delivered the opinion of the court, in which Senior Judge POSCH and Judge CADOTTE joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

GOODWIN, Judge:

A military judge sitting as a general court-martial convicted Appellant, in accordance with his pleas and pursuant to a plea agreement, of one charge and two specifications of wrongful solicitation to distribute and possess controlled substances in violation of Article 82, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 882;[1] one charge and one specification of failure to obey a lawful order in violation of Article 92, UCMJ, 10 U.S.C. § 892; one charge and 21 specifications of wrongful use, possession, possession with intent to distribute, and distribution of controlled substances in violation of Article 112a, UCMJ, 10 U.S.C. § 912a;[2] one charge and one specification of unlawfully carrying a concealed weapon in violation of Article 114, UCMJ, 10 U.S.C. § 914; one charge and two specifications of federal firearms offenses in violation of Article 134, UCMJ, 10 U.S.C. § 934;[3] and one additional charge with two specifications of

---

[1] Specifically, Appellant was convicted of one specification of wrongful solicitation to distribute Ritalin and one specification of wrongful solicitation to possess gamma hydroxybutyric acid (GHB). Appellant was also charged with one specification of wrongful solicitation to possess phencyclidine, alpha-pyrrolidinopentiopheno, and desomorphine; and one specification of wrongful solicitation to distribute heroin, both in violation of Article 82, UCMJ; however, the Government withdrew and dismissed with prejudice these specifications pursuant to its plea agreement with Appellant.

[2] Specifically, Appellant was convicted of one specification each of wrongful use of marijuana, methamphetamine, psilocybin mushrooms, cocaine, 3,4-methylenedioxymethamphetamine (MDMA), alprazolam, and amphetamine; one specification each of wrongful distribution of marijuana, methamphetamine, psilocybin mushrooms, cocaine, MDMA, Adderall and alprazolam; one specification each of wrongful possession with intent to distribute marijuana and methamphetamine; and one specification each of wrongful possession of psilocybin mushrooms, alprazolam, carisoprodol, clonazepam, and MDMA. Appellant was also charged with two specifications of the introduction of controlled substances onto a military installation; however, the Government withdrew and dismissed with prejudice these specifications pursuant to its plea agreement with Appellant.

[3] Appellant was convicted of one specification of making a firearm silencer without registering it or paying the required taxes and one specification of selling a firearm to a convicted felon. Appellant was also charged with three specifications of possessing illegal firearms, one specification of selling a firearm to a convicted felon, and one specification of engaging as a firearms dealer without having paid the required special tax; however, the Government withdrew and dismissed with prejudice these specifications pursuant to its plea agreement with Appellant.

dereliction of duty in violation of Article 92, UCMJ, 10 U.S.C. § 892.[4,5,6] The sentence as adjudged, approved, and entered consisted of a dishonorable discharge, 84 months of confinement, and reduction to the grade of E-1.

In this appeal, Appellant raises two assignments of error: (1) whether the two offenses under Article 134, UCMJ, are unconstitutional and (2) whether Appellant's sentence is inappropriately severe.[7] We find that the offenses charged under Article 134 are constitutional and that Appellant's sentence is not inappropriately severe. Finding no error materially prejudicial to a substantial right of Appellant, we affirm the findings and sentence as entered.

## I. BACKGROUND

Appellant, a master sergeant (E-7), enlisted in the Air Force in April 2000. As an Installation Spectrum Manager in the communications field, he deployed twice to the Middle East. According to the record, he is married with two children. In June 2019, Las Vegas Metropolitan Police Department (LVMPD) narcotics detectives notified special agents of the Air Force Office of Special Investigations (AFOSI) that they suspected Appellant was illegally selling firearms and controlled substances. Thereafter, LVMPD, the Drug Enforcement Agency (DEA), and AFOSI jointly investigated Appellant. During the joint investigation, Appellant sold firearms and controlled substances to undercover LVMPD, DEA, and AFOSI agents.

---

[4] Appellant was convicted of two specifications of being derelict in his duty to refrain from introducing methamphetamine and cocaine onto Nellis Air Force Base.

[5] Appellant was charged with one charge and specification of obstruction of justice in violation of Article 131b, UCMJ, 10 U.S.C. § 931b; however, the Government withdrew and dismissed with prejudice this charge and specification pursuant to its plea agreement with Appellant.

[6] The specification of Charge II (failure to obey a lawful order) involved an offense that occurred on divers occasions in 2018. Additionally, Specifications 1–14 of Charge III (various drug offenses) and Specification 2 of Charge VI (making a firearm silencer) involved offenses that spanned 2017–2019. For these specifications, the respective punitive articles are to the *Manual for Courts-Martial, United States* (2016 ed.). Unless otherwise specified, all other references in this opinion to the UCMJ and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.) (*MCM*). *See* Exec. Order 13,825, §§ 3, 5, 83 Fed. Reg. 9889, 9889–9890 (8 Mar. 2018).

[7] A portion of Appellant's second assignment of error is raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). Appellant listed this portion as a separate assignment of error, but we review both sentence appropriateness claims as a single issue.

After his arrest on 25 September 2019, Appellant admitted unlawfully selling firearms and illegally using, possessing, and distributing multiple controlled substances. During a search of Appellant's home, agents discovered multiple controlled substances. Appellant submitted to probable cause urinalysis and hair follicle drug tests. These tests returned positive results for tetrahydrocannabinol (THC)—the contraband compound in marijuana—cocaine, amphetamine, methamphetamine, and 3,4-methylenedioxymethamphetamine (MDMA).

Between 1 January 2017 and 25 September 2019, Appellant wrongfully used various drugs. Appellant wrongfully used marijuana on multiple occasions, typically smoking it on weekends. Appellant wrongfully used methamphetamine, including during the morning prior to his arrest and interview by agents. Appellant also wrongfully used psilocybin mushrooms, cocaine (on multiple occasions), MDMA, alprazolam (more commonly known by its brand name "Xanax"), and Adderall, which contains amphetamine.

In addition to wrongfully using drugs as described above, between 1 January 2017 and 25 September 2019, Appellant wrongfully distributed several drugs. Appellant distributed marijuana on multiple occasions, including once when he sold 56 grams of marijuana to a confidential informant (CI). Appellant wrongfully distributed methamphetamine on multiple occasions. On 3 and 4 July 2019, Appellant distributed 113.1 grams of methamphetamine to an undercover LVMPD detective. On 5 July 2019, Appellant distributed 113.8 grams of methamphetamine to the same detective. During 2019, Appellant also distributed small amounts (a gram or less) of methamphetamine to friends on multiple occasions. Additionally, Appellant wrongfully distributed psilocybin mushrooms. Appellant wrongfully distributed cocaine, including sales on 3 and 6 September 2019 to detectives or CIs. Appellant also distributed cocaine to friends. Appellant wrongfully distributed MDMA on multiple occasions, including a sale on 5 September 2019 to a CI for $500.00. Appellant also wrongfully distributed Adderall and wrongfully distributed Xanax on multiple occasions.

On 25 September 2019, agents searched Appellant's home and garage. During the search, agents found approximately 30 grams of marijuana and 50 grams of methamphetamine—more than a personal-use amount of each—along with scales and baggies. Agents also found a bag of psilocybin mushrooms and MDMA (Schedule I controlled substances), and alprazolam, clonazepam, and carisoprodol (Schedule IV controlled substances). While Appellant did not know that he possessed carisoprodol, he instead believed the carisoprodol was clonazepam. Appellant did not have a prescription for clonazepam or carisoprodol.

Twice between 22 February 2018 and 10 September 2018, Appellant provided fake urine samples to Nellis Air Force Base (AFB), Nevada, drug testing personnel by using synthetic urine and a prosthetic device. Using this item and the synthetic urine, Appellant likely avoided a positive drug test result.

Agents also searched Appellant's vehicle on Nellis AFB. During the search, agents found a vial containing methamphetamine residue and a vial containing cocaine residue. Agents also discovered synthetic urine and paraphernalia used to circumvent drug testing.

Between 1 January 2017 and 10 June 2019, Appellant built a firearm silencer, also called a suppressor, without registering it or paying the required taxes as required by 26 U.S.C. § 5822, in violation of 26 U.S.C. § 5861(f). Appellant built the silencer with knowledge he gained watching Internet videos.

At the time of his arrest, Appellant had a loaded Beretta .25 caliber semi-automatic handgun in the front pocket of his uniform pants. The handgun was within Appellant's immediate reach and was concealed so that others could not see it. Appellant was not carrying the handgun as part of his military duties. Appellant's possession of the concealed handgun violated the Nellis Installation Defense Plan that prohibits concealed carry of firearms within Nellis AFB.

Between 1 January 2017 and 25 September 2019, Appellant also sold firearms without paying the proper taxes on them and without registering either the firearms or their sale. Appellant sold multiple firearms to others for profit, including to undercover agents. Appellant also offered to sell an individual a bump stock[8] for an AK-47 style rifle. Appellant twice sold firearms to an individual, Mr. AN, in violation of 18 U.S.C. § 922(d)(1). When Appellant sold the firearms to Mr. AN, Appellant was aware that Mr. AN was on probation and prohibited from possessing a firearm.

The convening authority referred 11 charges with 60 specifications to a general court-martial. During motions practice, the military judge dismissed fifteen specifications for failure to state an offense and ordered a new preliminary hearing. Following these rulings, the convening authority directed the withdrawal of all charges and specifications. Thereafter, the Government referred new charges and specifications, and the drug and firearm offenses were

---

[8] According to the stipulation of fact, a bump stock is a device that allows a semiautomatic firearm to shoot more than one shot with a single pull of the trigger by harnessing the recoil energy of the semiautomatic firearm to which it is affixed so that the trigger rests and continues firing without additional physical manipulation of the trigger by the shooter. The stipulation of fact also notes that they became illegal to own in March 2019.

essentially preferred and referred anew. The convening authority referred these new charges and specifications to a general court-martial.

During and after the investigation, Air Force prosecutors, Department of Justice (DOJ) prosecutors, AFOSI agents, and DEA agents coordinated and determined which controlled buys DEA would handle and which buys AFOSI would handle. Air Force trial counsel and DOJ prosecutors also communicated with one another about the status of their prosecutions.

## II. DISCUSSION

### A. Constitutionality of Clause 3, Article 134, UCMJ

#### 1. Additional Background

For the first time on appeal, Appellant argues that Clause 3 of Article 134, UCMJ ("Clause 3"),[9] is unconstitutional as applied to servicemembers because it denies equal protection of the law. Appellant argues that a defendant in civilian federal court enjoys more constitutional rights than does a military accused, such as entitlement to grand jury indictment, jury size, and the requirement of a unanimous jury verdict. Consequently, according to Appellant, the Government's election of the military forum under Clause 3 deprives him and other servicemembers of equal protection under the law because civilian federal prosecutors declined to prosecute those offenses. Appellant asks this court to set aside and dismiss Specification 2 of Charge VI (making a silencer) and Specification 5 of Charge VI (selling a firearm to a known felon), which were charged under Clause 3.

Appellant did not raise objections to the constitutionality of Clause 3 during his court-martial. Generally, defenses or objections based on non-jurisdictional defects in the preferral, forwarding, or referral of charges phases are forfeited if not raised before entry of pleas. Rule for Courts-Martial 905(b)(1), (e). However, were Appellant to prevail in his equal protection argument, Clause 3 would be deemed unconstitutional, and the court-martial would lack jurisdiction to try him. *See United States v. Begani*, 81 M.J. 273, 276 (C.A.A.F. 2021). Because jurisdiction is unwaivable, Appellant has not waived his equal

---

[9] Article 134, UCMJ, creates three different types of crimes, commonly referred to as Clause 1, 2, and 3 offenses. Clause 1 offenses involve disorders and neglects to the prejudice of good order and discipline in the armed forces. Clause 2 offenses involve conduct of a nature to bring discredit upon the armed forces. Clause 3 offenses, as raised by Appellant, involve noncapital crimes or offenses which violate federal law, including law made applicable through the Federal Assimilative Crimes Act. *See MCM*, pt. IV, para. 91.c.(4).

protection argument. *See id.* Consequently, we review this assignment of error de novo. *See id.* (citation omitted).

### 2. Law

Appellant and the Government disagree whether Appellant's equal protection argument is a facial challenge or an as-applied challenge. Although Appellant argues that Clause 3 is unconstitutional as applied to him, he clearly states in his brief that it is "unconstitutional as applied to servicemembers, and therefore, [him]." Appellant argues in his reply brief that he is not facially challenging Clause 3 whereby he would seek remedy for all servicemembers; rather, he seeks only remedy for himself. Clause 3 has been applied to Appellant here because he violated federal law while also subject to the UCMJ. This application is the same for every servicemember who violates a federal law that is not specifically prohibited by another article of the UCMJ. Consequently, we determine that Appellant's claim is a facial challenge that asks this court to "'go beyond the facts before it' to consider whether the law is unconstitutional." *See United States v. Wright*, 48 M.J. 896, 899 (A.F. Ct. Crim. App. 1998) (quoting *Sanjour v. E.P.A.*, 56 F.3d 85, 92 n.10 (D.C. Cir. 1995) (en banc)). To succeed with this facial challenge, Appellant "must establish that no set of circumstances exists under which the Act would be valid." *See id.* at 900 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Appellant has failed to establish that there are no set of circumstances under which Clause 3 would be valid. Consequently, we determine that this clause remains facially constitutional.

Although we find that Appellant's challenge is a facial one, we also evaluate the merits of his as-applied argument. As a panel of this court recently discussed, a military accused is afforded a measure of due process and equal protection during military courts-martial. *See United States v. Anderson*, No. ACM 39969, 2022 CCA LEXIS 181, at *53 (A.F. Ct. Crim. App. 25 Mar. 2022) (unpub. op.) (citing *Weiss v. United States*, 510 U.S. 163, 176 (1994)), *rev. granted*, 82 M.J. 440 (C.A.A.F. 2022). However, "in determining what process is due, courts must give particular deference to the determination of Congress, made under its authority to regulate the land and naval forces . . . ." *Weiss*, 510 U.S. at 177 (internal quotation marks and citations omitted). Where the United States Supreme Court has "faced a due process challenge to a facet of the military justice system," it has asked whether the factors militating in favor of the asserted due process right "are so extraordinarily weighty as to overcome the balance struck by Congress." *Id.* at 177–78 (internal quotation marks omitted) (quoting *Middendorf v. Henry*, 425 U.S. 25, 44 (1976)).

Equal protection "is generally designed to ensure that the Government treats similar persons in a similar manner." *United States v. Gray*, 51 M.J. 1, 22 (C.A.A.F. 1999) (internal quotation marks and citation omitted).

> For the Government to make distinctions does not violate equal protection guarantees unless constitutionally suspect classifications like race, religion, or national origin are utilized or unless there is an encroachment on fundamental constitutional rights like freedom of speech or of peaceful assembly. The only requirement is that reasonable grounds exist for the classification used.

*Id.* at 22–23 (quoting *United States v. Means*, 10 M.J. 162, 165 (C.M.A. 1981)) (additional citations omitted).

"An 'equal protection violation' is discrimination that is so unjustifiable as to violate due process." *United States v. Akbar*, 74 M.J. 364, 406 (C.A.A.F. 2015) (quoting *United States v. Rodriguez-Amy*, 19 M.J. 177, 178 (C.M.A. 1985)). However, an accused servicemember is "not similarly situated to a civilian defendant." *Id.* (citing *Parker v. Levy*, 417 U.S. 733, 743 (1974)). Fundamental rights "are only fundamental to the extent (and to the persons to whom) the Constitution grants them in the first place." *United States v. Begani*, 79 M.J. 767, 776 (N.M. Ct. Crim. App. 2020), *aff'd*, 81 M.J. 273 (C.A.A.F. 2021).

"When no suspect class or fundamental right is involved, . . . the [Supreme] Court requires only a demonstration of a rational basis as support for the law." *Wright*, 48 M.J. at 901 (citing *Romer v. Evans*, 517 U.S. 620 (1996)). "Under the rational basis test, the burden is on the appellant to demonstrate that there is no rational basis for the rule he is challenging. The proponent of the classification 'has no obligation to produce evidence to sustain the rationality of a statutory classification.'" *United States v. Paulk*, 66 M.J. 641, 643 (A.F. Ct. Crim. App. 2008) (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)). "As long as there is a plausible reason for the law, a court will assume a rational reason exists for its enactment and not overturn it." *Id.* (citing *Heller*, 509 U.S. at 320; *United States v. Carolene Products Co.*, 304 U.S. 144, 153 (1938)).

The two relevant categories in this case are military accuseds and civilian federal defendants. The Constitution recognizes that "the exigencies of military discipline require the existence of a special system of military courts in which not all of the specific procedural protections deemed essential in [Article] III trials need apply." *O'Callahan v. Parker*, 395 U.S. 258, 261 (1969), *overruled on other grounds by Solorio v. United States*, 483 U.S. 435 (1987). Although a court-martial is similar to a federal district court trial, "the mili-

tary justice system is unique and subject to a different degree of constitutional protection than what is afforded in civilian criminal trials." *United States v. Causey*, 82 M.J. 574, 587 (N.M. Ct. Crim. App. 2022). Thus, a military accused is "not similarly situated to a civilian defendant." *Anderson*, unpub. op. at \*53 (citation omitted). Even after *Ramos v. Louisiana*, ___ U.S. ___, 140 S. Ct. 1390 (2020), this distinction remains. *See, e.g.*, *United States v. Pritchard*, 82 M.J. 686, 692–93 (A. Ct. Crim. App. 2022); *Anderson*, unpub. op. at \*50–57.

### 3. Analysis

A law violates equal protection when it discriminates in its treatment of similarly situated individuals or groups. *Begani*, 81 M.J. at 280. However, a civilian defendant and a military accused are not similarly situated. *Akbar*, 74 M.J. at 406. Moreover, Congress had a rational basis to treat these categories of individuals differently. Laws that do not burden fundamental rights or target a suspect class are constitutional "so long as [they bear] a rational relation to some legitimate end." *United States v. Boie*, 70 M.J. 585, 590 (A.F. Ct. Crim. App. 2011) (internal quotation marks and citation omitted).

Appellant is not a member of a suspect class. A military accused does not have a Sixth Amendment right to a jury in a trial by court-martial. *See, e.g.*, *United States v. Riesbeck*, 77 M.J. 154, 162 (C.A.A.F. 2018); *United States v. Easton*, 71 M.J. 168, 175 (C.A.A.F. 2012); *United States v. McClain*, 22 M.J. 124, 128 (C.M.A. 1986). A military accused does not have a right "to indictment by grand jury." *Easton*, 71 M.J. at 175. Furthermore, in his reply brief, Appellant clearly states that he does not claim that he has a right to a unanimous verdict post-*Ramos*. For these reasons, we determine that Clause 3 does not burden Appellant's fundamental rights.

Consequently, Appellant must prove the Government has no rational basis for treating a military accused differently from a civilian federal defendant. *See Paulk*, 66 M.J. at 643. It is well established, however, that the Constitution applies to a military accused differently in many contexts than it does to a civilian defendant. *See Easton*, 71 M.J. at 175–76. We determine that Congress possessed a rational basis when it passed Clause 3, specifically, the promotion of good order and discipline by allowing military prosecution of federal crimes not necessarily enumerated in the UCMJ. We further conclude Congress possessed a rational basis for making Clause 3 offenses subject to the military court-martial system and not requiring the military provide a military accused the exact same rights as a federal civilian defendant. We also note that Appellant pleaded guilty to the Clause 3 offenses.

## B. Sentence Appropriateness

Appellant also argues that the length of confinement adjudged is inappropriately severe.[10] We are not persuaded and accordingly deny relief.

### 1. Additional Background

Appellant presented mitigating factors during sentencing, including good character letters, personal photographs, and his pretrial confinement reading list. In his unsworn statement, Appellant expressed remorse and discussed the difficulties his 18 months of pretrial confinement caused his family. The gravamen of Appellant's sentencing argument stems from his complaint that his 533 days of pretrial confinement were unduly harsh because he was prosecuted in both civilian and military courts. Appellant offers no evidence that such confinement renders his sentence unlawful, however, aside from highlighting his "concerns, which included issues with medications, meals, solitary confinement, lack of adequate sunlight, lack of adequate heat in winter months, pay, and security guards leaving their posts."

The Government introduced significant aggravating evidence at sentencing. Appellant was a master sergeant (E-7) with over 19 years of service at the time of his arrest. Appellant used a variety of controlled substances and covered up his usage by repeatedly using synthetic urine and a prosthetic device. Appellant sold cocaine, methamphetamine, MDMA, and marijuana to civilians and law enforcement agents. Furthermore, Appellant conducted multiple methamphetamine sales where the number of doses of methamphetamine approximated one thousand. Additionally, Appellant possessed a concealed weapon during some of his drug sales, sold firearms without proper licensure, and built a silencer without licensure.

### 2. Law

This court reviews sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (citation omitted). We "may affirm only . . . the sentence or such part or amount of the sentence, as [we find] correct in law and fact and determine[ ], on the basis of the entire record, should be approved." Article 66(d)(1), UCMJ, 10 U.S.C. § 866(d)(1). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009) (citations omitted). We consider whether an appellant's

---

[10] Through counsel, Appellant argues that the sentence associated with the offenses charged under Clause 3 are inappropriately severe. Pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), Appellant argues that his pretrial confinement rendered his sentence inappropriately severe.

sentence was appropriate "judged by 'individualized consideration' of the particular accused 'on the basis of the nature and seriousness of the offense and the character of the offender.'" *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (quoting *United States v. Mamaluy*, 27 C.M.R. 176, 180–81 (C.M.A. 1959)). Although we have broad discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

### 3. Analysis

We "utilize the experience distilled from years of practice in military law" to determine whether a sentence is appropriate. *See United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999) (quoting *United States v. Olinger*, 12 M.J. 458, 461 (C.M.A. 1982)). We have also given individualized consideration to Appellant, the nature and seriousness of his offenses, his record of service, and all other matters contained in the record of trial.

Although Appellant's adjudged sentence included a significant period of incarceration—84 months—his sentenced incarceration was less than the 108 months permissible under his plea agreement, and significantly less than the total amount of confinement that could have been imposed by the court-martial without a plea agreement. Although we have broad discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *Nerad*, 69 M.J. at 146. Having given individualized consideration to Appellant, the nature and seriousness of his offenses, his record of service, and all other matters contained in the record of trial, we find the adjudged sentence appropriate and not inappropriately severe.

Furthermore, we have carefully considered Appellant's assertion that the military's prosecution of offenses under Clause 3 that could have been prosecuted in U.S. District Court constitutes an inappropriately severe sentence. We have also considered Appellant's argument that his conditions of pretrial confinement render his sentence inappropriately severe. We find that these contentions do not require further discussion or warrant relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

### III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d).

Accordingly, the findings and sentence are **AFFIRMED**.



FOR THE COURT

CAROL K. JOYCE
Clerk of the Court