## UNITED STATES

### v.

### Andrea BART, Hospital Corpsman Third Class (E–4), U.S. Navy.

### NMCCA 200101108.

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 1 June 2000.

Decided 26 May 2005.

Lt Rebecca S. Snyder, JAGC, USNR, Appellate Defense Counsel.

Lt Stephen Reyes, JAGC, USNR, Appellate Defense Counsel.

Lt Christopher Burris, JAGC, USNR, Appellate Government Counsel.

Before DORMAN, Chief Judge, CARVER, Senior Judge, and WAGNER, Appellate Military Judge.

CARVER, Senior Judge:

A military judge, sitting as a general court-martial, convicted the appellant, pursuant to her pleas, of conspiracy to obstruct justice, false official statement, consensual sodomy, adultery, and four specifications of obstruction of justice, in violation of Articles 81, 107, 125, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 907, 925, and 934. The appellant was sentenced to a dishonorable discharge, confinement for 24 months, forfeitures of $250.00 pay per month for 24 months, and reduction to pay grade E–1. The pretrial agreement had no effect on the sentence. The convening authority approved the adjudged sentence, but in an act of clemency suspended all confinement after 4 May 2001 (approximately 11 months after trial) for a period of 12 months.

The appellant asserts as error that (1) the plea of guilty to conspiracy is improvident as to the first two alleged overt acts and (2) the conviction for consensual sodomy is unconstitutional. After carefully considering the record of trial, the appellant's assignments of error, the Government's responses, and the appellant's reply brief, we conclude that the findings must be revised. We further conclude that, upon modification of the findings, the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

## Constitutionality of Conviction For Consensual Sodomy

### I. Introduction

First, we review the supplemental assignment of error. The appellant contends that her conviction for consensual sodomy violates her constitutional right to privacy, relying upon *Lawrence v. Texas,* 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003), which held unconstitutional a Texas statute that criminalized consensual homosexual sodomy. The Supreme Court ruled that, with a few exceptions, criminalizing consensual sodomy, whether homosexual or heterosexual, violated the right to liberty under the due process clause of the Fifth and Fourteenth Amendments to the United States Constitution. *Lawrence,* 539 U.S. at 578, 123 S.Ct. 2472.

### II. Forfeiture of Review

The Government asserts that the appellant forfeited her right to review the constitutionality of her conviction because she

failed to raise that issue at trial. In that regard, the Government relies upon RULE FOR COURTS-MARTIAL 905(e), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.). However, in the reply brief, the appellant points out that, under R.C.M. 905(e), failure to state an offense is *not* forfeited by failure to raise the issue at trial:

(e) *Effect of failure to raise defenses or objections.* Failure by a party to raise defenses or objections or to make motions or requests which must be made before pleas are entered under subsection (b) of this rule shall constitute waiver. The military judge for good cause shown may grant relief from the waiver. Other motions, requests, defenses, or objections, *except* lack of jurisdiction or *failure of a charge to allege an offense,* must be raised before the court-martial is adjourned for that case and, unless otherwise provided in this Manual, failure to do so shall constitute waiver.

R.C.M. 905(e)(emphasis added). The appellant also cites *United States v. Hilton,* 27 M.J. 323 (C.M.A.1989) for the proposition that she did not forfeit review of the issue. In *Hilton,* the Court of Military Appeals held that review of the constitutionality of a general regulation was not forfeited. "Appellant pleaded not guilty in this case and the objections now raised challenge, *inter alia,* the very power of the Government to hale him before a court-martial on this charge." *Hilton,* 27 M.J. at 326.

Although we could not find an opinion by our superior court directly on point regarding a case in which the appellant pled guilty, we see no logical reason not to extend the same holding to guilty-plea cases. We acknowledge, however, that the service courts appear to be split on the issue. In *United States v. Williams,* 27 M.J. 710, 724–25 (A.C.M.R.1988), the Army court found that a guilty plea did not prohibit review of the constitutionality of a general order. *Williams* relied in part on 1 CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL § 175b ("A defendant who has pleaded guilty is not barred from claiming that the indictment or information failed to state an offense, or that the pleading showed

on its face that the prosecution was barred by the statute of limitations") and *United States v. Ury,* 106 F.2d 28 (2d Cir.1939)(holding that a plea of guilty did not foreclose the appellant from challenging the constitutionality of the statute on appeal).

In *United States v. Sollmann,* 59 M.J. 831 (A.F.Ct.Crim.App.2004), the Air Force court held that "[o]f course, a guilty plea does not preclude a constitutional challenge to the underlying conviction." *Id.* at 834 (citing *Menna v. New York,* 423 U.S. 61, 96 S.Ct. 241, 46 L.Ed.2d 195 (1975)). An older Air Force case concluded otherwise. *See United States v. Jones,* 26 M.J. 632 (A.F.C.M.R.1988)(holding that an unconditional guilty plea and the failure to raise a constitutional claim in the trial court barred the assertion of such a claim for the first time on appeal). We could find no published Navy–Marine Corps cases on point. In *United States v. Heath,* 39 M.J. 1101 (C.G.C.M.R.1994), the Coast Guard court held that a plea of guilty forfeited review of the lawfulness of a general regulation.

The Supreme Court has held that changes in substantive criminal rules, including constitutional determinations that the alleged conduct is protected, apply retroactively:

When a decision of this Court results in a "new rule," that rule applies to all criminal cases still pending on direct review. *Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). As to convictions that are already final, however, the rule applies only in limited circumstances. New *substantive* rules generally apply retroactively. This includes decisions that narrow the scope of a criminal statute by interpreting its terms, *see Bousley v. United States,* 523 U.S. 614, 620–621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998), as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish, *see Saffle v. Parks,* 494 U.S. 484, 494–495, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990); *Teague v. Lane,* 489 U.S. 288, 311, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989)(plurality opinion). Such rules apply retroactively because they "necessarily carry a significant risk that a defen-

dant stands convicted of 'an act that the law does not make criminal'" or faces a punishment that the law cannot impose upon him. *Bousley, supra,* at 620, 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (quoting *Davis v. United States,* 417 U.S. 333, 346, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974)).

*Schriro v. Summerlin,* —— U.S. ——, 124 S.Ct. 2519, 2522–23, 159 L.Ed.2d 442 (2004)(footnote omitted).

After a thorough review, we hold that the appellant is entitled to raise the issue of the constitutionality of her sodomy conviction on appeal even though she did not raise the issue at trial. We believe that this view is consistent with R.C.M. 905(e) and the holdings of the Supreme Court and is not inconsistent with our superior court.

### III.  Standard of Review

"Whether [the] [a]ppellant's conviction must be set aside in light of the Supreme Court's holding in *Lawrence* is a constitutional question reviewed de novo." *United States v. Marcum,* 60 M.J. 198, 202–03 (C.A.A.F.2004)(citing *Jacobellis v. Ohio,* 378 U.S. 184, 190, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964)). "[C]onstitutional challenges to Article 125 based on the Supreme Court's decision in *Lawrence* must be addressed on an as applied, case-by-case basis." *United States v. Stirewalt,* 60 M.J. 297, 304 (C.A.A.F.2004)(citing *Marcum,* 60 M.J. 198).

■ Our superior court concluded that we determine the constitutionality of Article 125, UCMJ, as it applies to the appellant by considering three questions:

> First, was the conduct that the accused was found guilty of committing of a nature to bring it within the liberty interest identified by the Supreme Court? Second, did the conduct encompass any behavior or factors identified by the Supreme Court as outside the analysis in *Lawrence*? 539 U.S. at 578, 123 S.Ct. 2472. Third, are there additional factors relevant solely in the military environment that affect the nature and reach of the *Lawrence* liberty interest?

*Marcum,* 60 M.J. at 206–07; *see also Stirewalt,* 60 M.J. at 304.

### IV.  Facts

In May 1998, the appellant checked aboard Group Navy Personnel Office at 1st Force Service Support Group, Camp Pendleton, California. The appellant resided in base quarters with her son while seeking a divorce from Mr. "B," a civilian residing out-of-state and from whom the appellant had been separated since 1995. In July 1998, the appellant and Hospital Corpsman Second Class (HM2) "T" began a sexual relationship. They engaged in sexual intercourse, in base quarters, numerous times a week between August 1998 and July 1999. The appellant also committed oral and anal sodomy with HM2 T on divers occasions in her base quarters from August 1998 to July 1999. At the time of the offenses, both the appellant and HM2 T were assigned to the same department at Marine Corps Base Camp Pendleton. Also, at the time, HM2 T was married to a female civilian, had two children, and lived in base housing with his wife and his children. From July 1998 to 13 February 1999, in order to facilitate their romantic relationship, the appellant and HM2 T arranged to spend time together secretly on numerous occasions under the guise that HM2 T had a roving patrol duty, and that while on duty, HM2 T could not be contacted via telephone. The appellant and HM2 T fabricated the once-a-week military duty so that HM2 T could spend time with the appellant without alerting his wife to the adulterous affair.

On or about 13 February 1999, HM2 T murdered his wife. On at least two occasions before the murder of HM2 T's wife, the appellant and HM2 T discussed the convenience of Mrs. T being gone or deceased in the context of their amorous relationship. Both HM2 T and the appellant disclosed how each might kill HM2 T's wife, although the appellant claimed she was not serious. Also, before the murder of HM2 T's wife, the appellant imposed a deadline by which HM2 T must separate from his wife or the appellant would end their romantic relationship. The appellant modified the deadline on several occasions, affording HM2 T extra time to advise his wife that their marriage was over.

## V. Discussion

■ We now answer the questions posed by our superior court in *Marcum*. In this case, we answer the first question in the affirmative, that the sexual conduct was a private relationship between two consenting adults. We answer the second question in the negative, that none of the listed exceptions apply to these facts. The appellant's conduct, however, squarely implicates the third prong of the framework, in that there were additional factors relevant solely in the military environment that affect the nature and reach of the *Lawrence* liberty interest.

A Secretary of the Navy Instruction applicable to the appellant at the time of the offense proscribed personal relationships between enlisted members that are unduly familiar and that fail to respect differences in grade or rank, when such relationships are prejudicial to good order or of a nature to bring discredit on the Naval service. U.S. Navy Regulations, Article 1165 (1990). To avoid preferential treatment, undermining good order and discipline, or diminished unit morale, the military has consistently regulated relationships between service members. *See United States v. McCreight*, 43 M.J. 483, 485 (C.A.A.F.1996). While violations of Article 1165 are subject to criminal sanctions through operation of Article 92, UCMJ, 10 U.S.C. § 892, the Government elected not to charge the appellant with failure to obey a lawful order. Nonetheless, a potential Article 92, UCMJ, violation informs this court's analysis as to the third prong of the framework. This court recognizes that due to concerns for the "military mission, ... servicemembers, as a general matter, do not share the same autonomy as civilians." *Marcum*, 60 M.J. at 206 (citing *Parker v. Levy*, 417 U.S. 733, 758, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974)). In evaluating the appellant's claim, this court appropriately considers the "military interests of discipline and order." *Stirewalt*, 60 M.J. at 304.

The appellant and HM2 T worked in the same department. Their co-workers knew about the close personal relationship between the appellant and HM2 T, thus impacting unit morale. The appellant's acts of sodomy were intertwined with her committing adul-tery. The appellant and HM2 T arranged to commit adultery and sodomy nearly weekly under the guise that HM2 T had a roving duty patrol, which allowed HM2 T to secure non-suspicious time away from his wife and children. Moreover, these offenses occurred in the appellant's on-base quarters. The direct and obvious impact of the appellant's crimes with HM2 T on the military interests of discipline and order is especially apparent when one of the Sailors who was engaged in this illicit relationship murdered his civilian wife to continue his romantic relationship with the appellant, who was also married at the time of the offense. Moreover, the appellant provided several false official statements concerning her adulterous affair with HM2 T as well as conspired with HM2 T to obstruct justice, thus compounding her criminal liability. This court finds that the appellant's misconduct with HM2 T had a detrimental impact on the military interests of discipline and order. Accordingly, these facts place the appellant's sodomy "outside the protected liberty interest recognized in *Lawrence*; it also was contrary to Article 125. As a result, Article 125 is constitutional as applied to [the] [a]ppellant." *Marcum*, 60 M.J. at 208.

### Providence of Guilty Plea For Conspiracy

In her other assignment of error, the appellant asserts that her guilty plea to Charge III is improvident as to the first two alleged overt acts because the acts occurred before the agreement. Thus, the appellant asserts that overt acts (1) and (2) of the Specification of Charge III should be stricken and the court should reassess the sentence. Appellant's Brief of 30 May 2003 at 5. We agree and take corrective action in our decretal paragraph.

■ A military judge shall not accept a plea of guilty to an offense without making sufficient inquiry into its factual basis. Art. 45(a), UCMJ, 10 U.S.C. § 845(a); *United States v. Care*, 40 C.M.R. 247, 253, 1969 WL 6059 (C.M.A.1969). Before accepting a guilty plea, the military judge must ordinarily explain the elements of the offense and ensure that a factual basis for the plea exists. *United States v. Jordan*, 57 M.J. 236, 238 (C.A.A.F.2002); *United States v. Faircloth*,

45 M.J. 172, 174 (C.A.A.F.1996); *United States v. Davenport,* 9 M.J. 364, 367 (C.M.A. 1980). Eliciting conclusions of law from the accused are insufficient to provide a factual basis for a guilty plea. *Jordan,* 57 M.J. at 238 (citing *United States v. Outhier,* 45 M.J. 326, 331 (C.A.A.F.1996)). Rather, acceptance of a guilty plea requires an appellant to substantiate the facts that objectively support the guilty plea. *United States v. Schwabauer,* 37 M.J. 338, 341 (C.M.A.1993); *see* R.C.M. 910(e).

■ The standard of review to determine whether a plea is provident is whether the record reveals a substantial basis in law and fact for questioning the plea. *United States v. Prater,* 32 M.J. 433, 436 (C.M.A.1991). Such questioning must overcome the generally applied waiver of the factual issue of guilt inherent in voluntary pleas of guilty, and the only exception to the general rule of waiver arises when an error prejudicial to the substantial rights of the appellant occurs. Art. 59(a), UCMJ; R.C.M. 910(j).

■ The elements of conspiracy are:
(1) That the accused entered into an agreement with one or more persons to commit an offense under the code; and
(2) That, while the agreement continued to exist, and while the accused remained a party to the agreement, the accused or at least one of the co-conspirators performed an overt act for the purpose of bringing about the object of the conspiracy.

MANUAL FOR COURTS–MARTIAL, UNITED STATES (2000 ed.), Part IV, ¶ 5(b). Paragraph 5(c)(4), of Part IV of the Manual for Courts–Martial explains the nature of the overt act required to substantiate a conspiracy conviction, namely that one or more of the conspirators undertake the overt act "either at the time of or following the agreement to commit the offense." Moreover, if the Government elects to charge more than one overt act, it need not prove every overt act. *See United States v. Collier,* 14 M.J. 377, 380 (C.M.A. 1983).

■ The following additional facts were pertinent to this court's consideration. In February 1999, the Naval Criminal Investigative Service (NCIS) investigated HM2 T and the appellant concerning the disappearance of HM2 T's wife. The appellant and HM2 T knew their adulterous affair was an offense and that it could be construed as motive if discovered. Shortly after the NCIS investigation began, the appellant gathered numerous mementos of her affair with HM2 T, placed them in a cardboard box, gave the box to her neighbor, Ms. "E," for safekeeping and asked Ms. E not to say anything about the appellant's relationship with HM2 T. The appellant then told HM2 T that she gave the mementos to Ms. E. Thereafter, the appellant and HM2 T agreed to continue concealing their relationship and the mementos to obstruct the NCIS investigation.

In our review of the record, we have determined that the military judge accurately listed the elements and definitions applicable to this offense. Record at 16–19. The appellant indicated a clear understanding of those elements and definitions, and stated that the elements correctly described her conduct. *Id.* at 19. However, this court finds that the appellant completed the first two alleged overt acts, namely that she placed the mementos in a cardboard box and gave the box to Ms. E, before forming an agreement with HM2 T to obstruct the NCIS investigation. Accordingly, the first two alleged overt acts fail to satisfy the element of conspiracy involving an overt act. Of note, however, our superior court has stated that the Government need not prove every overt act charged.

In light of the foregoing, we conclude that the language in overt acts (1) and (2) of the Specification of Charge III must be excepted and dismissed. As to the remaining three alleged acts, we find there is sufficient evidence to conclude the appellant's conduct constituted overt acts in furtherance of the conspiracy.

**Reassessment**

Upon reassessment, in light of our action, we find that the sentence received by the appellant would not have been any lighter even if she had not been found guilty of overt acts (1) and (2) of the Specification of Charge III. We further find that the sentence is appropriate for this offender and the remaining offenses. *See United States v. Peoples,*

29 M.J. 426, 428 (C.M.A.1990); *United States v. Sales,* 22 M.J. 305, 307 (C.M.A.1986).

### Conclusion

Accordingly, the following words and figures are excepted and dismissed from the Specification of Charge III:

(1) gather together letters, cards, photographs, books, and other materials shared by or passed between the accused and PO2 Tate and place them in a cardboard box;

(2) deliver the box and its contents to Mrs. Kristen Elliot and ask her to store it in her residence and not to give it to the U.S. Naval Criminal Investigative Service, or words to that effect;

The remaining three overt acts are renumbered as (1), (2), and (3). As excepted and renumbered, that specification and the remaining findings and the sentence, as approved by the convening authority, are affirmed.

Chief Judge DORMAN and Judge WAGNER concur.