# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

---

**No. ACM 40134 (rem)**

---

**UNITED STATES**
*Appellee*

**v.**

**Zachary C. ROCHA**
Airman (E-2), U.S. Air Force, *Appellant*

---

On Remand from
the United States Court of Appeals for the Armed Forces

Decided 15 January 2025

---

*Military Judge*: Colin P. Eichenberger.

*Sentence*: Sentence adjudged 19 March 2021 by GCM convened at Mountain Home Air Force Base, Idaho. Sentence entered by military judge on 3 May 2021: Bad-conduct discharge, confinement for 90 days, forfeiture of all pay and allowances, and reduction to E-1.

*For Appellant*: Lieutenant Colonel Todd J. Fanniff, USAF; Major Samantha P. Golseth, USAF; Major Spencer R. Nelson, USAF.

*For Appellee*: Lieutenant Colonel Thomas J. Alford, USAF; Lieutenant Colonel Matthew J. Neil, USAF; Major Cortland T. Bobczynski, USAF; Major John P. Patera, USAF; Major Brittany M. Speirs, USAF; Captain Kate E. Lee, USAF; Mary Ellen Payne, Esquire.

Before RICHARDSON, MASON, and KEARLEY, *Appellate Military Judges*.

Senior Judge RICHARDSON delivered the opinion of the court, in which Judge MASON and Judge KEARLEY joined.

---

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

---

RICHARDSON, Senior Judge:

This case is before us a second time. On 19 March 2021, a general court-martial comprised of officer members convicted Appellant, contrary to his pleas, of one specification of indecent conduct—engaging in sexual acts with a sex doll with the physical characteristics of a female child—in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934.[1] The military judge sentenced Appellant to a bad-conduct discharge, 90 days of confinement, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority denied Appellant's request for waiver of forfeitures and approved the sentence in its entirety.

Appellant raised eight issues when he originally appealed his case to this court in 2022, which we reworded: (1) whether private masturbation with a doll is constitutionally protected conduct; (2) whether Appellant had fair notice that private masturbation with a doll was subject to criminal sanction; (3) whether the military judge erred in denying the Defense's motion to dismiss for failure to state an offense; (4) whether trial defense counsel was ineffective for failing to file two motions and for deficient findings argument; (5) whether Appellant's conviction is legally and factually sufficient; (6) whether the military judge's failure to instruct the panel that a guilty verdict must be unanimous was harmless beyond a reasonable doubt; (7) whether trial defense counsel was ineffective in an additional respect: for failing to ask two panel members questions regarding their experience and ability to sit in Appellant's court-martial; and (8) whether trial counsel engaged in prosecutorial misconduct in findings argument.[2] This court found in Appellant's favor on issue (2), and therefore did not address the remaining issues. *United States v. Rocha*, No. ACM 40134, 2022 CCA LEXIS 725, at *3 (A.F. Ct. Crim. App. 16 Dec. 2022) (unpub. op.), *rev'd*, 84 M.J. 346 (C.A.A.F. 2024). We set aside the findings and sentence and dismissed the charge and specification with prejudice. *Id.* at *19.

The United States Court of Appeals for the Armed Forces (CAAF) held "the presidentially enumerated elements and definitions of Article 134[, UCMJ,] provide fair notice to servicemembers of ordinary intelligence that engaging in sexual acts with a lifelike child sex doll falls squarely within the President's definition of indecent conduct." *United States v. Rocha*, 84 M.J. 346, 352 (C.A.A.F. 2024) (footnote omitted). Accordingly, the CAAF reversed this court's

---

[1] Unless otherwise noted, all references in this opinion to the UCMJ and Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.) (*MCM*).

[2] Appellant personally raised issues (6)–(8) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

opinion and returned the record of trial for remand to this court "to (1) determine whether [Appellant] had a constitutionally protected liberty interest under *Lawrence v. Texas*, 539 U.S. 558 . . . (2003), to privately engage in sexual activity with a childlike sex doll; and (2) address any other issues previously raised by [Appellant] before [this court] that were mooted by [our] prior decision to overturn the conviction." *Id.*

Appellant's case was re-docketed with this court on 11 June 2024. The Government submitted a brief on 9 September 2024. On 16 September 2024, the Government moved this court for oral argument. On the same day, Appellant replied to the Government's brief. On 18 September 2024, Appellant filed an opposition to the Government's request for oral argument. These briefs and request for oral argument all address issue (1)—identified by the CAAF and Appellant—concerning whether Appellant had a constitutionally protected liberty interest. On 19 December 2024, we denied the request for oral argument.

We begin our discussion with some analysis of the CAAF's decision in this case. We then consider whether Appellant had a constitutionally protected liberty interest, and whether his conviction was factually sufficient. We find Appellant had a constitutionally protected liberty interest to privately engage in sexual activities with his doll, and find the conviction was not factually sufficient. Because we resolve issue (1) and part of issue (5) raised before this court in Appellant's favor, we do not further address the remaining raised issues.

## I. BACKGROUND

Appellant purchased online a short[3] silicone doll with female physical characteristics, including oral, anal, and vaginal orifices and small breasts. He named the doll Adele. In his interview with investigators, Appellant claimed he was curious about sex dolls, he found this doll when he searched a website for mini sex dolls, and chose to purchase this doll in part because he needed something small to fit in his dorm room. Appellant said the doll was not advertised as being "a child doll, but it is very – it is kind of obvious." Appellant admitted that "it kind of seems strange that [he had], basically what is a child sex doll" but insisted that "child pornography with a real child involved is just disgusting." Appellant explained how he benefitted emotionally from the doll, for example, by talking to it about his day at work. He interacted with the doll in many ways, such as washing it, sitting it in a chair with a blanket or a book, and changing its clothes. Appellant denied taking the doll out of his dormitory

---

[3] Witnesses described the doll as being between one-and-a-half and four feet tall. It appears from photographs in the record that the doll was on the taller side of this range.

room.[4] Appellant told investigators that on three occasions, in his bedroom, he masturbated using the anal or vaginal orifice of the doll but did not ejaculate in it. Appellant stated each time he started to think, "[W]hat if this was a life, what if this was real," so he stopped his sexual activity with it. When asked whether he ever pictured "Adele as real," Appellant answered, "Real as in, like, a real child, somebody's daughter[?] No. No." Appellant denied having any sexual interest in children. Appellant claimed to have very strong biological sexual urges and stated he used the doll or another device—a sort of cup—to relieve himself. This court's prior opinion set forth additional factual background of the case. *Rocha*, unpub. op. at *3–6.

## II. DISCUSSION

### A. Implication of the *Rocha* Decision Reached by the CAAF

We begin with the CAAF's majority opinion addressing "whether the elements of indecent conduct under Article 134[, UCMJ,] provide fair notice that committing sexual acts with a childlike sex doll is subject to criminal sanction." *Rocha*, 84 M.J. at 351. Notably, Chief Judge Ohlson concluded:

> It is true that in light of our changing society, the boundary between what sexual conduct is "indecent" and what sexual conduct is not "indecent" may be so amorphous as to leave a servicemember of ordinary intelligence without sufficient notice of whether a specific act he or she wishes to engage in is subject to criminal sanction under the UCMJ. That, however, is not the case here. Simply stated, the elements and accompanying definition of "indecent" provide servicemembers with fair notice that the specific act of penetrating with one's penis the anal and vaginal orifices of a lifelike sex doll with the physical characteristics of a prepubescent child is, indeed, prohibited under Article 134[, UCMJ].

*Id.*

We endeavor to follow the CAAF's remand guidance. In so doing, however, we have identified two areas of concern. At first glance, it appears the majority in *Rocha* (1) found as fact that the doll had "the physical characteristics of a prepubescent child," and (2) found as a matter of law that "the specific act of penetrating [the doll] with one's penis the anal and vaginal orifices" was indecent. *Id.* at 351; *see id.* at 348. But, for the reasons below, we have a different

---

[4] Appellant's dormitory room was a single-occupancy, private bedroom. He shared a bathroom with another Airman. Appellant admitted taking the doll with him into the bathroom, but with privacy.

interpretation of this part of the opinion, and conclude it is limited to the issue of fair notice.

First, unlike this court, the CAAF may not determine questions of fact. *Compare* Article 66(d)(1), UCMJ, *with* Article 67(c), UCMJ. This court did not find the doll was a lifelike sex doll with the physical characteristics of a prepubescent child; indeed, we specifically made "no finding concerning whether the doll was a representation of a child." *Rocha*, unpub. op. at *3 n.5. It appears that the CAAF merely was expanding upon the language from the specification of which Appellant was convicted: "a sex doll with the physical characteristics of a female child."

Second, the CAAF remanded the case for this court to "determine whether Appell[ant] had a constitutionally protected liberty interest under *Lawrence v. Texas*" and "address any other issues previously raised by Appell[ant] . . . that were mooted by [our] prior decision to overturn the conviction." *Rocha*, 84 M.J. at 352. Appellant had raised to this court the *Lawrence* issue, as well as legal and factual sufficiency. *Rocha*, unpub. op. at *2–3. If the CAAF had found as a matter of law that the conduct at issue was indecent, they would have left us little room to decide these issues.[5]

The majority in the CAAF opinion was not persuaded by the solitary and hidden nature of the conduct at issue. By its holding, the CAAF majority seemingly rejected this court's analysis that:

> Traditionally, obscenity or indecency "must, as a general thing, involve or touch other persons." *United States v. Snyder*, 1 C.M.A. 423, 4 C.M.R. 15, 18 (C.M.A. 1952). This is not to say that indecent acts must be committed *with* another. Our review of case law reveals several hallmarks of criminally indecent conduct, to include: (1) minors or others who do not consent or may not easily either refuse or manifest lack of consent; (2) prostitution, contraband, or other precursor or concurrent criminal conduct; and (3) in public, or in an open and notorious manner.

*Rocha*, unpub. op. at *15–16 (footnotes and additional citations omitted).

Instead, in concluding a "servicemember of ordinary intelligence" would know Appellant's masturbation with a sex doll that resembles a child was "criminally actionable," the CAAF made a comparison to possession of child pornography, another Presidentially enumerated offense under Article 134, UCMJ. *Rocha*, 84 M.J. at 351 (citing *Manual for Courts-Martial, United States* (2019 ed.) (*MCM*), pt. IV, para. 95.c.(4)). The CAAF emphasized "the possession

---

[5] Even assuming the majority in the CAAF found Appellant's conduct indecent as a matter of law, our determinations do not change.

of obscene images may be criminally actionable even when they 'may not actually involve minors, but either *resemble* or are staged to appear so.'" *Id.* (citing *MCM*, pt. IV, para. 95.c.(1)). The CAAF did not conclude, nor have occasion to conclude, a childlike sex doll is contraband or somehow illegal to possess. In that light, we address whether Appellant had a constitutionally protected liberty interest, and we consider other issues noted above and as directed in the CAAF's remand order.

## B. Constitutionally Protected Liberty Interest

Appellant asserts his conduct—masturbating in private and in solitude—was constitutionally protected. We agree.

### 1. Additional Background

Specification 2 of the Charge alleged Appellant did

> on divers occasions between on or about 24 April 2019 and on or about 20 May 2019, commit indecent conduct, to wit: engaging in sexual acts with a sex doll with the physical characteristics of a female child, and that said conduct was of a nature to bring discredit upon the armed forces.

Shortly after arraignment, the military judge summarized an issue raised regarding this specification:

> Specification 2 of the Charge, as drafted, raises at least a potential issue regarding private consensual sexual conduct, which would require the Government to prove an aggravating factor be present in order to make the criminal conduct, pardon me, to make the conduct criminal under Article 134, indecent conduct. Specifically, to take it outside of the scope of *Lawrence v. Texas* and to comply with CAAF precedent on that matter, including *United States vs. Goings*, . . . 72 M.J. 202.

The military judge then framed the issue as failure to state an offense.

Accordingly, trial defense counsel moved for the specification to be dismissed with prejudice for failure to state an offense. The basis of her argument was that Appellant had a constitutional liberty interest in his wholly private sexual activity, and no aggravating factor divested him of that interest.[6]

> There is no evidence to be offered by the [G]overnment that any of these alleged sexual acts occurred in public, in any open and

---

[6] Trial defense counsel cited *Lawrence v. Texas*, 539 U.S. 558, 578 (2003), and *United States v. Marcum*, 60 M.J. 198, 206 (C.A.A.F. 2004).

notorious location, nor that anyone witnessed any of these alleged acts with the sex doll. Further, the sex doll was allegedly found during a search of [Appellant's] private dorm room on Mountain Home Air Force Base, Idaho. Prior to this search, no evidence will be offered by the [G]overnment that anyone was aware of his possession of the sex doll or the alleged private "sexual acts" with the sex doll.

Trial defense counsel also countered some of the Government's arguments. She argued no "diminished sense of privacy" in a private dorm room on a military installation. She asserted that even though Appellant purchased the doll through interstate commerce, the purchase was not directly related to the charged indecent conduct. She further argued the insignificance of the type of doll:

It is not even obvious, from the doll itself, because it was clothed, that it was a sex doll. An individual can have 100 Barbies around them and masturbate and they can have 100 Skippers,[7] who are teenage dolls, and they can masturbate. They can order them online, get them from China, and it's still not sufficient to be an aggravating circumstance. There can be a baby doll that someone is masturbating to and that is still not indecent because it is within the confines of the home.

The military judge denied the defense motion.[8] He specifically did not make a finding about whether the aggravating factors proffered by the Government would be sufficient to "take the alleged conduct outside of the protections from *Lawrence*." He concluded that "is a factual determination that must be made by the trier of fact and not a legal determination to be made by th[e] court, prior to trial on the merits."

### 2. Law

We review de novo whether an appellant was convicted for conduct in which he had a constitutionally protected liberty interest. *See United States v. Marcum*, 60 M.J. 198, 202 (C.A.A.F. 2004) (citation omitted); *United States v. McDaniel*, 80 M.J. 555, 557–58 (A.F. Ct. Crim. App. 2020).

---

[7] "Skipper's appearance has changed significantly since her introduction [in 1964]. The first Skipper doll was eight years old. She was designed as a response to requests for Barbie to have children; Mattel felt that a little sister would be a better choice instead. Skipper was later changed to a teenager, and a controversial 'Growing Up Skipper' doll with growable breasts was created to demonstrate the change." https://en.wikipedia.org/wiki/Skipper_(Barbie) (last visited 7 Nov. 2024).

[8] This ruling is the subject of Appellant's third assignment of error.

More than two decades ago, the United States Supreme Court decided *Lawrence v. Texas*, 539 U.S. 558 (2003). The Court considered "the validity of a Texas statute making it a crime for two persons of the same sex to engage in certain intimate sexual conduct." *Lawrence*, 539 U.S. at 562. The Supreme Court concluded:

> The case . . . involve[s] two adults who, with full and mutual consent from each other, engaged in sexual practices common to a homosexual lifestyle. The petitioners are entitled to respect for their private lives. The State cannot demean their existence or control their destiny by making their private sexual conduct a crime. Their right to liberty under the Due Process Clause[9] gives them the full right to engage in their conduct without intervention of the government. "It is a promise of the Constitution that there is a realm of personal liberty which the government may not enter." The Texas statute furthers no legitimate state interest which can justify its intrusion into the personal and private life of the individual.

*Id.* at 578 (quoting *Planned Parenthood v. Casey*, 505 U.S. 833, 847 (1992), *overruled by Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 302 (2022) (holding States may regulate or prohibit abortion)).

The Supreme Court further concluded, however, that certain factors limit a person's liberty and privacy interest in consensual sexual activity in other cases. The Court observed:

> The present case does not involve minors. It does not involve persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused. It does not involve public conduct or prostitution.

*Id.*

Military courts have interpreted and applied *Lawrence* in a variety of contexts. "No one disagrees that wholly private and consensual sexual activity, without more, falls within *Lawrence*." *United States v. Goings*, 72 M.J. 202, 206 (C.A.A.F. 2013). Put another way, "private consensual sexual activity is not punishable as an indecent act absent aggravating circumstances." *Id.* at 205 (citations omitted).

In *Marcum,* our superior court found, however, that the appellant's non-forcible sodomy with a subordinate Airman who was within the appellant's chain of command to be outside the protected liberty interest of *Lawrence*. 60

---

[9] U.S. CONST. amend. XIV.

M.J. at 208. In affirming the appellant's conviction, the CAAF recognized certain "additional factors relevant solely in the military environment that affect the nature and reach of the *Lawrence* liberty interest." *Id.* at 207.

Military courts apply the principles in *Lawrence* using a "contextual, as applied analysis, rather than facial review." *Marcum*, 60 M.J. at 205; *see also McDaniel*, 80 M.J. at 557 (noting appellate courts conduct a fact-specific inquiry of claims that a statute is unconstitutional as applied). In *United States v. Castellano*, the CAAF explained how *Marcum* applied *Lawrence* to the military. 72 M.J. 217 (C.A.A.F. 2013).

> In *Marcum*, we applied *Lawrence* in the military context and upheld the constitutionality of Article 125, UCMJ, [10 U.S.C. § 925,[10]] construing it to reach only acts of sodomy that involve (1) a factor that *Lawrence* identified as not involved in that case, or (2) "additional factors relevant solely in the military environment that affect the nature and reach of the *Lawrence* liberty interest." *Marcum*, 60 M.J. at 206–07. Thus, *Lawrence* identified a constitutionally protected liberty interest and defined its scope, and *Marcum* answered whether and how that interest applies in the military context.

*Castellano*, 72 M.J. at 221 (additional citation omitted).

In *Stanley v. Georgia*, 394 U.S. 557 (1969), the Supreme Court found a state law unconstitutional for prohibiting the mere private possession of obscene material as opposed to receipt, transportation, or distribution. The Court held such a prohibition violated the Fourth and Fourteenth Amendments. *Stanley*, 394 U.S. at 568. As part of the Court's decision, it explained, "Our whole constitutional heritage rebels at the thought of giving government the power to control men's minds." *Id.* at 565. The Court further reasoned, "The State may no more prohibit mere possession of obscene matter on the ground that it may lead to antisocial conduct than it may prohibit possession of chemistry books on the ground that they may lead to the manufacture of homemade spirits." *Id.* at 567.

Military courts have also recognized the principle of "freedom of thought and mind in the privacy of the home." *United States v. Meakin*, 78 M.J. 396, 402, n.5 (C.A.A.F. 2019) (quoting *United States v. Meakin*, No. ACM 38968, 2017 CCA LEXIS 476, at \*10 (A.F. Ct. Crim. App. 14 Jul. 2017) (unpub. op.)). The CAAF has made clear, however, that a person's "zone of privacy . . . does

---

[10] See *Manual for Courts-Martial, United States* (2008 ed.), pt. IV, ¶ 51, proscribing sodomy.

not extend beyond the confines of the home." *Id.* (citing *United States v. Bowersox*, 72 M.J. 71, 76 (C.A.A.F. 2013)). Consistent with this principle, the CAAF affirmed the appellant's convictions in *Meakin* for conduct unbecoming an officer and a gentleman for "transmitting obscenity over the internet by describing and encouraging the sexual exploitation and sexual abuse of children." *Id.* at 398. In explaining its decision, the Court observed that—unlike in *Stanley*— the appellant's "obscenity was not contained within his home for consideration within his own mind" and instead he "transmitted his written obscenities to seventeen separate individuals." *Id.* at 402.

Under military law, a shared barracks room has not been afforded the same expectation of privacy as a private home. *Bowersox*, 72 M.J. at 76–77. In *Bowersox*, the CAAF considered the constitutionality of the appellant's conviction for possession of child pornography in violation of 18 U.S.C. § 1466A(b)(1). *Id.* at 75. Bowersox shared a dorm room with a fellow soldier. *Id.* at 72. One day, as the dorm roommate entered their room, Bowersox stood up from his computer screen quickly and obscured his roommate's view. *Id.* Shortly thereafter, Bowersox showed his roommate "his computer screen, on which there were images of minors engaged in sexual activities," then asked his roommate if he should report the website. *Id.* The CAAF held "a soldier has less of an expectation of privacy in his shared barracks room than a civilian does in his home." *Id.* at 76 (citations omitted). The CAAF found the statute constitutional as applied, and declined to extend the holding in *Stanley*. *Id.* at 72, 77. "[T]he limited holding of *Stanley v. Georgia*, which recognized an individual's right to possess obscene materials 'in the privacy of his own home,' does not extend to [the a]ppellant's possession of obscene materials in his shared barracks room." *Id.* at 72 (citation omitted).

### 3. Analysis

We find that Appellant's conduct—masturbation, in solitude, in secret, and in private living quarters—should warrant the *Lawrence* liberty protection. That these facts are different than the facts in *Lawrence*—sodomy between two consenting adults in the home—does not dissuade us. The ostensibly childlike appearance of the doll also does not dissuade us.

The Government argues that for conduct to fall within the *Lawrence* liberty interest, the conduct must "involve relationships between persons that 'find expression' in consensual sexual activity." (Quoting *Marcum*, 60 M.J. at 206). They then argue that the involvement of another person is required to warrant *Lawrence* protection, because, according to the Government, the Supreme

Court sought to "protect[ ] the right to expression through sexual intimacy in relationships, not private sexual conduct in general."[11]

We conclude the focal point of *Lawrence* was private, consensual sexual activity, not merely fostering intimate relationships.[12] *Lawrence* declared that people "are entitled to respect for their private lives" and their "right to liberty under the Due Process Clause gives them the full right to engage in their conduct without intervention of the government. 'It is a promise of the Constitution that there is a realm of personal liberty which the government may not enter.'" *Lawrence*, 539 U.S. at 578. We are not persuaded we should construe *Lawrence* to protect sexual activity done consensually with another but not protect comparable conduct done alone where consent is not an issue.

"The present case does not involve minors. It does not involve persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused. It does not involve public conduct or prostitution." *Id.* To be clear, we do not hold that Airmen have a constitutionally protected right to masturbate while viewing child pornography. In this case, masturbation, in solitude, in secret, and in a private living place, is conduct that falls within the *Lawrence* liberty interest.[13]

---

[11] Additionally, the Government contends "[t]here was no 'intimate, consensual relationship' between Appellant and his lifeless child sex doll—there is only the former's exploitation of the latter as a tool for sexual gratification." (quoting *Meakin*, 78 M.J. at 403). The record indicates Appellant's "exploitation" of Adele over the two-to-three weeks he possessed her was mostly for his emotional support, not for sexual gratification. Moreover, the logic of the Government's argument would apply to most sexual toys; we see no such limitation in *Lawrence* and its progeny.

[12] Neither the Supreme Court nor the CAAF has articulated a requirement that the sexual conduct be a meaningful expression or that the persons be in a committed relationship.

[13] We echo Judge Johnson's conclusion about the constitutionally protected liberty interest in this case:

> In my view, Appell[ant]'s private, sexual conduct with an inanimate object in his single-occupancy dorm room in a military barracks was "constitutionally protected conduct, in a place deserving of constitutional protection." *United States v. Bowersox*, 72 M.J. 71, 80 (C.A.A.F. 2013) (Stucky, J., dissenting). First, laws regulating obscenity do not reach into the home, and this applies to a limited extent even where the home is a military barracks. And second, Appellee had a constitutional liberty interest in his wholly private masturbation in his private dorm room, even if he used a childlike doll for his own sexual gratification.

*Rocha*, 84 M.J. at 358 (Johnson, J., dissenting).

**C. Legal and Factual Sufficiency**

**1. Law**

***a. Standard of Review***

We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). "Our assessment of legal and factual sufficiency is limited to the evidence produced at trial." *United States v. Rodela*, 82 M.J. 521, 525 (A.F. Ct. Crim. App. 2021) (citation omitted).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (citation omitted). "[T]he term 'reasonable doubt' does not mean that the evidence must be free from any conflict[.]" *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (citation omitted). "In resolving questions of legal sufficiency," we are "bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Bright*, 66 M.J. 359, 365 (C.A.A.F. 2008) (internal quotation marks and citations omitted). The evidence supporting a conviction can be direct or circumstantial. *See United States v. Long*, 81 M.J. 362, 368 (C.A.A.F. 2021) (citing Rule for Courts-Martial 918(c)) (additional citation omitted). "[A] rational factfinder[ ] could use his 'experience with people and events in weighing the probabilities' to infer beyond a reasonable doubt" that an element was proven. *Id.* at 369 (quoting *Holland v. United States*, 348 U.S. 121, 140 (1954)). The "standard for legal sufficiency involves a very low threshold to sustain a conviction." *King*, 78 M.J. at 221 (internal quotation marks and citation omitted).

"The test for factual sufficiency is 'whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are ourselves] convinced of the [appellant]'s guilt beyond a reasonable doubt.'" *Rodela*, 82 M.J. at 525 (alterations in original) (quoting *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987)). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (alteration in original) (quoting *Washington*, 57 M.J. at 399), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018). "The term reasonable doubt . . . does not mean that the evidence must be free from conflict." *Id.* (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)).

### b. Elements

As noted above, the specification at issue alleged Appellant committed indecent conduct, in violation of Article 134, UCMJ, by "engaging in sexual acts with a sex doll with the physical characteristics of a female child."

Article 134, UCMJ, provides "all disorders and neglects to the prejudice of good order and discipline in the armed forces, all conduct of a nature to bring discredit upon the armed forces, and crimes and offenses not capital" are punishable at trial by court-martial. The elements of an Article 134, UCMJ, offense for service-discrediting conduct are "(a) that the accused did or failed to do certain acts, and (b) that, under the circumstances, the accused's conduct was of a nature to bring discredit upon the armed forces." *MCM*, pt. IV, ¶ 91.b.(2). "'Discredit' means to injure the reputation of." *MCM*, pt. IV, ¶ 91.c.(3). The service-discrediting clause of "Article 134 makes punishable conduct which has a tendency to bring the service into disrepute or which tends to lower it in public esteem." *MCM*, pt. IV, ¶ 91.c.(3).

The President enumerated the offense of *Indecent conduct* under Article 134, UCMJ, and listed elements, which, relevant to this case, include: (1) the accused engaged in certain conduct, (2) the conduct was indecent, and (3) that, under the circumstances, the conduct was of a nature to bring discredit upon the armed forces. *MCM*, pt. IV, ¶ 104.b.(1)–(3). "'Indecent' means that form of immorality relating to sexual impurity which is grossly vulgar, obscene, and repugnant to common propriety, and tends to excite sexual desire or deprave morals with respect to sexual relations." *MCM*, pt. IV, ¶ 104.c.(1). The President did not describe any particular conduct that would meet this definition.

The elements of Specification 2 of the Charge in this case include (1) Appellant engaged in conduct, to wit: engaging in sexual acts with a sex doll with the physical characteristics of a female child, (2) the conduct was indecent, and (3) that said conduct was of a nature to bring discredit upon the armed forces.

### c. Marcum *Factors*

The CAAF in *Marcum* set forth certain criteria (*Marcum* factors) "that remove sexual activity from the scope of *Lawrence*'s protected interest." *Castellano*, 72 M.J. at 218 (citing *Marcum*, 60 M.J. at 206–07). "While servicemembers clearly retain a liberty interest to engage in certain intimate sexual conduct, 'this right must be tempered in a military setting based on the mission of the military, the need for obedience of orders, and civilian supremacy.'" *Marcum*, 60 M.J. at 208 (quoting *United States v. Brown*, 45 M.J. 389, 397 (C.A.A.F. 1996)). The CAAF held in *Castellano* that the trier of fact, not the military judge, shall determine whether a *Marcum* factor was present. 72 M.J. at 218–19.

The most prominent theme in application of the *Marcum* factors is military nexus, to include commission of military offenses. *See*, *e.g.*, *United States v. Stirewalt*, 60 M.J. 297, 304 (C.A.A.F. 2004) (superior/subordinate relationship); *Marcum*, 60 M.J. at 208 (same); *United States v. Timsuren*, 72 M.J. 823, 827 (A.F. Ct. Crim. App. 2013) (inappropriate officer/enlisted relationship occurring in public); *United States v. Useche*, 70 M.J. 657, 660 (N.M. Ct. Crim. App. 2012) (consensual sexual activity in barracks); *United States v. Truss*, 70 M.J. 545, 549 (A. Ct. Crim. App. 2011) (conduct involving forcible sodomy of another person in the barracks); *United States v. Harvey*, 67 M.J. 758, 762 (A.F. Ct. Crim. App. 2009) (officer relationship abroad with foreign national); *United States v. Christian*, 61 M.J. 560, 563–64 (N.M. Ct. Crim. App. 2005) (military recruiter misconduct); *United States v. Bart*, 61 M.J. 578, 582 (N.M. Ct. Crim. App. 2005) (adulterous relationship between military members in the same unit, and in on-base quarters). Additionally, our sister court has found the third *Marcum* factor present where a regulation prohibited the conduct at issue. *United States v. Smith*, 66 M.J. 556, 561 (C.G. Ct. Crim. App. 2008) (relying on a military academy regulation prohibiting sexual conduct "on board military installations"). All these cases involve sexual activity with another person. None involve masturbation using an inanimate object.

### 2. Analysis

Appellant asserts "[m]asturbating in the privacy of one's home is legal and not indecent as a *matter of law*." Appellant also asserts "masturbating with a legally owned object [does not] transform[ ] the otherwise legal act of masturbating into an illegal activity."[14] We decline to make such broad conclusions in our consideration of legal sufficiency in this case.

Rather, having found a constitutionally protected liberty interest, we now consider whether "factors . . . remove [Appellant's] sexual activity from the scope of *Lawrence*'s protected interest." *Castellano*, 72 M.J. at 218. Specifically, we consider *Marcum* factors raised in this case and apply them in our factual sufficiency analysis.

#### a. Marcum *Factors*

The military judge correctly applied *Castellano* when he ruled that the members would determine whether an aggravating factor existed to remove constitutional protection for private sexual acts. 72 M.J. at 218–19. The military judge did not err in providing "instructions identifying facts or factors that are relevant to the constitutional context presented." *Castellano*, 72 M.J. at

---

[14] In our discussion of factual sufficiency, *infra*, we discuss the Government's arguments relating to the nature of the object with which Appellant masturbated.

223. The military judge identified one *Marcum* factor: he instructed the members that the aggravating circumstance was "the accused engaged in sexual acts with a sex doll with the physical characteristics of a female child, *to simulate sexual acts with a minor*." We consider this circumstance and other Government-asserted *Marcum* factors.

The Government argues Appellant's conduct does not warrant *Lawrence* protection because "it involved an adult servicemember performing sexual acts on a childlike sex doll to simulate sexual intercourse with a minor."[15] We disagree. We are not convinced Appellant was pretending he was having sexual intercourse with a child. Appellant professed he was not sexually interested in children, and he maintained he stopped his sexual conduct when the thought of it being a real person, child or not, came to his mind. Appellant thought a larger doll would be bulky and hard to move in a small dorm room. We are not convinced the only rational interpretation of the evidence in this case is that the doll resembled a child and not a young-looking adult. We do not find that Appellant simulated sexual acts with a child.

The nature of the object with which Appellant masturbated does not take the conduct outside the *Lawrence* liberty interest. The Government did not prove, or even allege, that the doll was illegal to possess either outright,[16] or as a depiction of child pornography.[17] No evidence suggests a dormitory regulation prohibited masturbation or possession of sex toys.

The thrust of the Government's argument that Appellant's conduct does not warrant *Lawrence* protection is centered on the childlike nature of the doll. When the logic of this argument is extended, however, it loses persuasion and

---

[15] Appellant was not charged with simulating sexual intercourse with a minor. He was charged with "engaging in sexual acts with a sex doll with the physical characteristics of a female child." An accused has a "right to know what offense and under what legal theory he will be tried and convicted." *United States v. Mendoza*, No. 23-0210, 2024 CAAF LEXIS 590, at *18 (C.A.A.F. 7 Oct. 2024) (quoting *United States v. Riggins*, 75 M.J. 78, 83 (C.A.A.F. 2016)). Thus, we have considered whether engaging in sexual acts with a sex doll with the physical characteristics of a female child, as charged, is substantially the same legal theory as simulating sexual acts with a minor. Even if it were, we ourselves are not convinced Appellant was simulating sexual acts with a minor.

[16] At the time of Appellant's offenses, it appears neither Congress nor Appellant's military authorities had criminalized the possession or use of sex dolls, childlike or otherwise.

[17] "'Child pornography' means material that contains either an obscene visual depiction of a minor engaging in sexually explicit conduct or a visual depiction of an actual minor engaging in sexually explicit conduct." *MCM*, pt. IV, ¶ 95.c.(4).

raises myriad issues. What if the doll looked like an adult, but the user fantasized that it was a child? What if a childlike doll did not have sexual orifices, like the Skipper doll trial defense counsel referenced, but nevertheless was used to masturbate? What if instead of a doll, an adult had consensual sex in the home with their adult spouse dressed as a child? What about other sexual fetishes involving mere objects? Criminal prosecution for pretending, without more, is improper criminal prosecution for bad thoughts. *See Stanley*, 394 U.S. at 565; *Meakin*, 78 M.J. at 402, n.5.

The Government argues "Appellant's behavior . . . tended to normalize sex between adults and children" and therefore "did not fall within the limited privacy interest articulated in *Lawrence*." Of course, we agree that the Constitution does not provide a right to sexually exploit children, and that the sexual exploitation of children should not be normalized. We disagree, however, that Appellant's acts were "normalizing" child exploitation. They were purely private acts. No one who might conclude the conduct was "normal" was aware it was occurring. No one even knew Appellant had the doll until after the charged conduct occurred.

The Government further argues Appellant's conduct does not warrant protection because "[o]utlawing and punishing reprehensible conduct like Appellant's is essential to maintaining a healthy and functioning military and preserving unit morale and cohesion."[18] To be sure, a determination that the conduct was of a nature to bring discredit upon the armed forces could satisfy the *Marcum* factors. *Cf. Goings*, 72 M.J. at 207 (placing the burden on the accused to demonstrate constitutional protection should apply "when the conduct being charged does not fall directly within the focal point of *Lawrence* . . . [and] the predicate sexual conduct is criminal because of some additional factor," including because it is of a nature to bring discredit upon the armed forces). But even considering potential discredit to the service, we have found that Appellant's conduct—masturbation, in solitude, in secret, and in private—should warrant the *Lawrence* liberty protection.

The fact that the conduct charged in this case occurred in Appellant's dormitory bedroom does not "affect the nature and reach of the *Lawrence* liberty interest." *Marcum*, 60 M.J. at 207. The military nexus here is thin—only that the conduct occurred in a private dormitory room subject to military inspection and regulation. If one concludes Airmen do not enjoy a *Lawrence* liberty interest in their private dormitory room, then private masturbation—with or with-

---

[18] Appellant was not alleged to have committed conduct to the prejudice of good order and discipline in the armed forces. *See MCM*, pt. IV, ¶ 104.b.(3)(i).

out a sex toy or some other inanimate object—could be subject to criminal sanction as an immoral sexual act. No party has made such an assertion to this court.

Additionally, we echo Judge Johnson's explanation in her separate opinion in *Rocha* that the law provided Appellant an expectation of privacy in his dormitory room:

> Appell[ant]'s conduct falls within the protection afforded private consensual sexual conduct within the home. First, unlike the appellant in *Bowersox*, Appell[ant] did not share a barracks room and did not show anyone the doll or share what he did with the doll. The doll was discovered in Appell[ant]'s single-occupancy military dorm bedroom, where he kept it and engaged in the charged conduct, unseen by anyone. The doll was discovered only as a result of the health and welfare inspection, and his conduct with the doll was discovered only as a result of his admission to investigators after they found the doll. *Bowersox* did not strip servicemembers residing in military barracks of any privacy interests; it only spoke to a diminished privacy interest in shared barracks rooms. Appell[ant] did not share his room and therefore, his conduct did not lose its protected, private character in this case merely because it occurred in a military dorm room.

84 M.J. at 361–62 (Johnson, J., dissenting).

### b. Conclusion

The Supreme Court's description in *Lawrence* applies here: "The present case does not involve minors. It does not involve persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused. It does not involve public conduct or prostitution." *Lawrence*, 539 U.S. at 578. The conduct at issue does not harm any sentient being, and it does not involve violation of a regulation. The conduct at issue does not involve the possession, viewing, production, or distribution of child pornography material prohibited by Article 134, UCMJ.[19] At most, the conduct involves a lifelike sex doll that may resemble a child. We are not persuaded Appellant's conduct simulated or normalized sexual abuse of a child. We are not convinced any *Marcum* factor applies in this case to remove a constitutionally protected liberty interest in solitary, secret masturbation in one's private space.

---

[19] *See supra* n.17, for a definition of child pornography. We decline to extend the meaning of "material" to include the mere act of masturbation, and we do not find the doll itself to be child pornography.

We have weighed the evidence in the record of trial, and we are not convinced of Appellant's guilt beyond a reasonable doubt. *Turner*, 25 M.J. at 325. We have determined the evidence does not support all the elements, including that Appellant's conduct was both indecent and, under the circumstances, of a nature to bring discredit upon the armed forces. *Wheeler*, 76 M.J. at 568; *MCM*, pt. IV, ¶ 104.b.(1)–(3).

### III. CONCLUSION

The findings of guilty and the sentence as entered are **SET ASIDE**. The charge and specification are **DISMISSED WITH PREJUDICE**. All rights, privileges, and property of which Appellant has been deprived by virtue of the findings and sentence set aside by this decision are ordered restored. *See* Articles 58b(c) and 75(a), UCMJ, 10 U.S.C. §§ 858b(c), 875(a).



FOR THE COURT

CAROL K. JOYCE
Clerk of the Court